## In the Matter of Stephen Hrones.

Suffolk. May 6, 2010. - September 10, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension.

This court concluded that an attorney's conduct in knowingly facilitating a nonlawyer's discrimination law practice — which included determining and executing fee arrangements, counselling clients about their legal rights, drafting and filing pleadings, conducting discovery, negotiating settlements, and deciding whether and when to remove administrative cases to State or Federal court, all without any supervision from either the attorney himself or another attorney at his firm — clearly fell within the ambit of assistance in the unauthorized practice of law, in violation of the Massachusetts Rules of Professional Conduct. [849-855]

This court concluded that a suspension from the practice of law for one year and one day was the appropriate sanction to impose on an attorney who, among other violations, had formed a business arrangement with a nonlawyer and had assisted a nonlawyer in the practice of law, resulting in injury and prejudice to multiple clients, but not misuse of client funds. [855-857]

Information filed in the Supreme Judicial Court for the county of Suffolk on October 30, 2009.

The case was reported by *Ireland,* J.

*Elizabeth N. Mulvey* for the respondent.

*Susan Strauss Weisberg,* Assistant Bar Counsel.

Spina, J. This bar discipline matter is before us on a reservation and report, without decision, from a single justice of this court. The respondent, Stephen Hrones, is an attorney who practices law and maintains a law firm in Boston. The Board of Bar Overseers (board) has recommended that he be suspended for one year and one day, for, among other violations, forming a business arrangement with a nonlawyer and assisting a nonlawyer in the unauthorized practice of law. The respondent argues (1) that his actions did not amount to assisting a nonlawyer in the unauthorized practice of law, and (2) that a three-month suspension is the appropriate sanction. For the reasons that fol-

low, we conclude that the respondent did assist a nonlawyer in the unauthorized practice of law, and a suspension from the practice of law for one year and one day is the appropriate sanction for this and his other violations.

1. *Background.* The following facts are drawn from the findings of a hearing committee, which were adopted unanimously by the full board. See *Matter of Brauer*, 452 Mass. 56, 57 (2008). We have supplemented the hearing committee's findings with undisputed facts contained in the record on appeal. See *id.*

The respondent was admitted to the practice of law in this Commonwealth on December 14, 1972. At the time of the misconduct, the respondent operated a law firm in Boston, employing an associate, a secretary, and an intern. The respondent's legal practice was concentrated in the areas of criminal defense and civil rights cases.

Around September, 2001, the respondent was introduced to Lionel Porter, a law school graduate who had not passed the bar examination. Porter was knowledgeable in employment discrimination law and had appeared before[1] the Massachusetts Commission Against Discrimination (MCAD) on behalf of the National Association for the Advancement of Colored People. Porter was looking for work, and the respondent agreed that Porter would share office space with respondent's law firm and utilize the firm's support staff. Relying on the law firm's name and the respondent's license to practice law, the respondent and Porter agreed that Porter, working as a paralegal, would develop a practice in employment discrimination cases before the MCAD and the United States Equal Employment Opportunity Commission (EEOC). They agreed that the firm would enter into contingent fee arrangements with Porter's clients, and all fees and retainers would be paid to the firm. The respondent would then give Porter two-thirds of any fees collected and retain one-third. The respondent listed Porter on the firm's letterhead as a

---

[1]See 804 Code Mass. Regs. § 1.10 (1)(c) (1999) (allowing MCAD complaints with the Massachusetts Commission Against Discrimination [MCAD] to be filed by nonprofit organizations "whose purposes includes the elimination of the unlawful practice[s]") and 804 Code Mass. Regs. § 1.13(5)(b) (1999) (claimant may be accompanied to an informal investigative conference "by his/her attorney or other representative").

paralegal, and he permitted Porter to use a firm business card that identified him as a paralegal.

The respondent's firm generally did not handle employment or other discrimination cases, and the respondent himself had little or no experience in discrimination cases. The respondent intended that Porter would operate a virtually independent discrimination law practice, without substantial supervision by the respondent or any other attorney at the firm. No one in the office was assigned to, or did, supervise Porter's work.

Prior to his employment, Porter told the respondent that he was not required to be a member of the Massachusetts bar to practice before the MCAD. The respondent and Porter reviewed an unidentified statute or regulation that the respondent believed confirmed Porter's representation regarding nonlawyer practice at the MCAD. However, the respondent also understood that Porter could represent clients at the MCAD only pursuant to an appearance of an attorney of record; therefore, the respondent gave Porter authorization to sign his name to appearance forms, administrative complaints, and other filings before the MCAD and the EEOC, without requiring that the respondent review them before filing.

Porter identified prospective clients by reviewing the MCAD's list of pro se complainants and sent each a letter on firm letterhead. The letter stated that "[p]ersons at [respondent's] firm have had several years handling discrimination complaints and the firm is generally known for its civil rights advocacy." Porter marketed his practice and exercised sole discretion in deciding to accept discrimination cases. He determined fee arrangements, executed fee agreements, and collected fees. In conducting the cases, Porter filed complaints, drafted pleadings, conducted discovery, counselled clients as to their legal rights, settled cases, and performed all other legal work on the cases. Porter carried out these functions and operated the firm's discrimination practice with virtually no supervision by the respondent or another lawyer in the firm.

The respondent left to Porter's discretion whether and when a case should be removed from the MCAD or EEOC to State or Federal court. The respondent and Porter did not make any arrangements to handle such a contingency, and the respondent did

not make any arrangements requiring Porter to seek his authorization before removing a case — in the respondent's name — to State or Federal court. In at least two instances, Porter actually removed cases to State or Federal court, without the respondent's knowledge. The record does not show whether Porter ever appeared at an oral argument or before any State or Federal court.

In June, 2003, the MCAD assessed sanctions against the respondent, as attorney of record, in connection with misconduct by Porter. The respondent learned of the sanctions in June, but took no action. Porter subsequently concealed a September, 2003, warning that the respondent's failure to pay sanctions would result in his suspension from practice before the MCAD. In November, 2003, the respondent received a notice from the MCAD suspending the respondent, his firm, and Porter from practice before the MCAD for one year for failure to pay the sanctions. The order required the respondent to withdraw as counsel or remove all cases to a court within twenty-one days. The respondent did not investigate the charges, review Porter's case files, withdraw his appearances in any cases, or notify Porter's clients that the firm had been suspended from practice before the MCAD.[2] Approximately forty cases were pending at the time of the suspension, and the respondent did not instruct Porter to take any action in response to the order. The respondent did not do anything at this time to protect the rights of the firm's discrimination clients.

Despite the sanctions, the respondent did not terminate his relationship with Porter. Around the same time, the respondent learned that Porter had removed a case from the MCAD to Federal court, under the respondent's name. The respondent reprimanded Porter, but did not terminate the relationship or investigate whether other suits were filed in court under his name. In early October, 2004, the respondent learned that Porter had filed an untimely complaint in Federal court under the respondent's name, without the respondent's authority. In addition, between February and October, 2004, the respondent received multiple complaints of neglect, lack of communication, misrepresentation, and other misconduct by Porter, including

---

[2]In light of the notice, the respondent did request hearings before the MCAD and the office of Bar Counsel (bar counsel). The MCAD did not grant a hearing.

complaints filed by clients with the office of Bar Counsel (bar counsel).

In October, 2004, the respondent learned from bar counsel that Porter had not remitted a client's fee payment and he fired Porter in response, for violating their agreement that Porter would run all fees through the respondent's accounts. At this point, the respondent notified Porter's clients of the termination, refunded retainer fees to some of them, and acknowledged that in a number of cases, the firm had missed key deadlines and otherwise mismanaged the cases. He directed an associate to review the files to determine which claims were viable, and contacted outside attorneys to see if they would be interested in taking some of the cases.

2. *Procedural history.* Bar counsel's third amended petition for discipline brought eight counts against the respondent. Count I set out general charges arising from the respondent's alleged misconduct. Counts II through VI alleged misconduct specific to five clients, all as a result of Porter's mismanagement of their cases. In each of those cases, Porter failed to meet mandatory filing deadlines, which resulted in dismissal of the clients' underlying claims. Counts VII and VIII concerned unrelated violations of the rules regarding IOLTA accounts and the provision of financial assistance to clients.

The case was heard by a hearing committee in April, 2008, and the hearing committee recommended that the respondent be suspended for six months and one day. The hearing committee determined that the respondent improperly split fees with Porter, failed to supervise Porter, failed to communicate adequately with the discrimination clients, failed to provide competent and diligent representation to those clients, failed to keep adequate trust records, advanced financial assistance to clients, and entered into a business transaction with one client.

On appeal, the board adopted the hearing committee's subsidiary findings, but modified the report by adding conclusions that the respondent had assisted in unauthorized practice, formed a business entity with Porter, made false, deceptive, or misleading communications, and made unauthorized disclosure of confidential client information. The board recommended that the respondent be suspended for one year and one day.

3. *Standard of review.* "In bar discipline cases that have been reserved and reported, we 'review the board's findings and reach our own conclusion.' " *Matter of Wainwright*, 448 Mass. 378, 384 (2007), quoting *Matter of Fordham*, 423 Mass. 481, 487 (1996), cert. denied, 519 U.S. 1149 (1997). We accept "subsidiary facts found by the board" if they are "supported by substantial evidence, upon consideration of the record." S.J.C. Rule 4.01, § 8 (4), as appearing in 425 Mass. 1309 (1997). The findings and recommendations of the board, although not binding on this court, are entitled to great weight. *Matter of Murray*, 455 Mass. 872, 879 (2010), and cases cited. The board's findings here, adopting all the hearing committee's findings, are supported by the evidence, and we accept those findings.

4. *Assistance in the unauthorized practice of law.* The respondent argues that he did not assist in the unauthorized practice of law, but instead failed to supervise Porter adequately, a lesser violation of the Massachusetts Rules of Professional Conduct. The respondent argues that assistance in the unauthorized practice of law requires more than the negligence or omissions present in this case and also requires the lawyer to possess a specific intent to assist in the unauthorized practice of law. Bar counsel argues that, not only did Porter engage in the unauthorized practice of law, the respondent assisted him in such practice.

Rule 5.5 (b) of the Massachusetts Rule of Professional Conduct, 426 Mass. 1410 (1998), which was in effect through December 31, 2006, prohibits an attorney from "assist[ing] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."[3] Only attorneys may represent parties in court and give legal advice. See *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. 660, 665 (1971); *Opinion of the Justices*, 289 Mass. 607, 613-614 (1935). Although this court has observed that "[i]t is not easy to define the practice of law," *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. 176, 180 (1943), we have stated that the practice of law includes:

"directing and managing the enforcement of legal claims

---

[3]Effective January 1, 2007, the rule was reworded and restructured, but its substance is unchanged. See Mass. R. Prof. C. 5.5 (a), as appearing in 447 Mass. 1302 (2007). In this opinion, we cite to the former rule, as it was in effect during the incidents at issue.

and the establishment of the legal rights of others, where it is necessary to form and to act upon opinions as to what those rights are and as to the legal methods which must be adopted to enforce them, the practice of giving or furnishing legal advice as to such rights and methods and the practice, as an occupation, of drafting documents by which such rights are created, modified, surrendered or secured."

*Matter of an Application for Admission to the Bar of the Commonwealth*, 443 Mass. 1010, 1012 n.4 (2005), quoting *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. 369, 372 (1936). We also have held that the practice of law may involve "either rendering legal advice to or soliciting . . . clients, or . . . engaging in a legal contest in a Massachusetts forum." *Matter of Chimko*, 444 Mass. 743, 752 (2005). Finally, we have held that "an attorney should not permit lay persons even to appear to form the attorney-client relationship with a prospective client, because that is part of the practice of law." *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 820 (1983). The appropriate inquiry is whether the actions by Porter, "viewed individually or as a whole, are actions only a lawyer is entitled to perform on behalf of another in the circumstances." See *Matter of the Shoe Mfrs. Protective Ass'n, supra.*

Here, Porter's discrimination practice included determining fee arrangements and executing fee agreements, counselling clients about their legal rights, drafting and filing pleadings, conducting discovery, negotiating settlements, and deciding whether and when to remove cases from the MCAD or EEOC for filing in State or Federal court. In *Matter of Jackman*, 20 Mass. Att'y Discipline Rep. 263, 267-268 (2004), *S.C.*, 444 Mass. 1013 (2005), the single justice determined that the unauthorized practice of law occurred when an attorney's staff member handled and settled personal injury cases with inadequate supervision or oversight. Similarly, many of the activities undertaken by Porter in this case fall within the definition of the "practice of law."

The respondent argues that "the vast majority of Porter's activities fall within the ambit of permissible paralegal work." While many tasks performed by an attorney may also be performed by a paralegal, we require that an attorney supervise a

paralegal's performance of such work. See comment 1 to Mass. R. Prof. C. 5.5 (b) (rule "does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work"). Here, respondent did not supervise Porter in Porter's discrimination law practice. In addition, much of Porter's practice of law before the MCAD was unauthorized, as practice by nonlawyers before the MCAD is confined to the filing of complaints by a qualifying organization and participation in some informal conferences.[4] See 804 Code Mass. Regs. § 1.10 (1)(c) (1999) (allowing MCAD complaints to be filed by nonprofit organizations "whose purposes include the elimination of the unlawful practice[s]"); 804 Code Mass. Regs. § 1.13(5)(b) (1999) (claimant may be accompanied to an informal investigative conference "by his or her attorney or other representative"). Porter's discrimination law practice at the respondent's firm was not covered under the regulation regarding nonprofit organizations, as he was not acting on behalf of a qualified organization; accordingly, Porter handled each of his cases at the MCAD under the appearances he filed in respondent's name, but without any supervision from the respondent or another attorney at respondent's firm. In addition, Porter's unsupervised activity at the MCAD went far beyond appearing at informal investigative conferences.

The respondent argues that, even if Porter's activities consisted of the unauthorized practice of law, he did not offer any assistance to Porter in violation of Mass. R. Prof. C. 5.5 (b). Specifically, the respondent contends that (1) because the hearing committee determined his conduct was negligent, and consisted mostly of omissions, the more accurate violation is failure to supervise under Mass. R. Prof. C. 5.3 (b), 426 Mass.

[4]The respondent relies on testimony by a former MCAD commissioner to support his argument that Porter was authorized to practice before the MCAD. The former commissioner testified that, while there was no regulation allowing law firm paralegals to engage in the practice of law at the MCAD, it was common for paralegals to engage in some activities at the MCAD during his tenure. See 804 Code Mass. Regs. § 1.13(5)(b) (claimant may be accompanied to an informal investigative conference "by his/her attorney or other representative"). He did testify that hearings on probable cause, interrogatories, depositions, and public hearings at the MCAD were expected to be handled by attorneys.

1408 (1998); and (2) in order to have assisted in the unauthorized practice of law, the respondent must have had a more active role and the specific intent to assist in practice which he knows to be unauthorized. Despite the respondent's arguments, we conclude that the total effect of his conduct was to assist Porter in the unauthorized practice of law.

The hearing committee determined that the respondent merely failed adequately to supervise a nonlawyer assistant under Mass. R. Prof. C. 5.3 (b), which states that "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." In support of this theory, the respondent relies on *Matter of Holzberg*, 15 Mass. Att'y Discipline Rep. 264, 266 (1999) (*Holzberg*), wherein an attorney was held to have failed to supervise his support staff, but not to have assisted in the unauthorized practice of law, when he allowed a paralegal to handle a client's tort claim. *Holzberg* can be distinguished in that it only involved a single instance of misconduct, and the paralegal was not responsible for an unsupervised ongoing practice. *Id.* Moreover, the attorney in *Holzberg* did not allow the paralegal to file actions in court under his name. *Id.* The facts here go far beyond those presented in *Holzberg*, and support the board's finding that the respondent not only failed to supervise Porter adequately, but also assisted Porter in the unauthorized practice of law.

Lawyers who employ nonattorneys are required to supervise the delegated work and retain responsibility for the nonattorney's work. The Massachusetts Rules of Professional Conduct indicate that failure to do so could result in a charge of assistance in the unauthorized practice of law. See comment 1 to Mass. R. Prof. C. 5.5. See also Restatement (Third) of the Law Governing Lawyers § 4 comment g (2000) ("[L]awyers and law firms are empowered to retain nonlawyer personnel to assist firm lawyers in providing legal services to clients. In the course of that work, a nonlawyer may conduct activities that, if conducted by that person alone in representing a client, would constitute unauthorized practice. Those activities are permissible and do not constitute unauthorized practice, so long as the responsible lawyer or law firm provides appropriate supervision

. . . and so long as the nonlawyer is not permitted to . . . split fees . . ."). In *Matter of DiCicco*, 6 Mass. Att'y Discipline Rep. 83, 89-91 (1989), the single justice held that, where an attorney formed a business with a paralegal to represent prison inmates experiencing administrative problems and listed the paralegal on letterhead as "Of Counsel," and then failed to supervise the paralegal's activities, the attorney assisted in the unauthorized practice of law. Similarly, in *Matter of Jackman*, 20 Mass. Att'y Discipline Rep. 263, 267-268 (2004) (*Jackman*), the respondent was held to have provided the "necessary 'assistance' " to a nonmember of the bar to conduct the unauthorized practice of law when he agreed to allow the nonlawyer to manage the day-to-day operations of an office in which nonlawyers handled and settled personal injury cases, arranged to split legal fees from the business with the nonlawyer, and then failed to provide adequate supervision or oversight. The differences between *Jackman* and this case are minor: in *Jackman*, the nonlawyers operated from a separate office; here, Porter ran a separate practice within the respondent's office. In addition, the respondent allowed Porter to run his own unsupervised discrimination law practice from the respondent's law office, understanding that people would "assume that Porter was employed by [the firm] as a paralegal, despite the reality that Porter was carrying on his own practice." The total effect of the respondent's conduct was to facilitate Porter's unauthorized practice of law by creating an environment in which it could exist. Here, the respondent allowed it to flourish.

The respondent's efforts to curb Porter's conduct, by holding Porter out as a paralegal, instructing Porter on fee agreements, requiring Porter to turn over all fee payments to the firm, and minimally reprimanding Porter when he was informed of Porter's missteps, are not sufficient to avoid a charge of assistance in the unauthorized practice of law. See, e.g., *Matter of Jackman, supra* at 268 (finding it immaterial that nonattorneys did not hold themselves out as members of bar).

The respondent's final argument is that, because he had no specific intent to assist Porter in the unauthorized practice of law, the decision by the board cannot stand. The hearing committee found that the respondent had a good faith belief that Porter was

permitted to practice before the MCAD,[5] based on an unidentified regulation that he believed permitted such practice; therefore, the respondent argues that he had no specific intent to assist Porter in the unauthorized practice of law. The board rejected this argument, noting that nothing in Mass. R. Prof. C. 5.5 suggests a requirement of specific intent, in contrast with other rules that explicitly require that a lawyer "knowingly" engage in prohibited conduct before receiving disciplinary sanctions.[6] It is clear that the respondent was aware of the nature and the extent of Porter's unsupervised discrimination practice, which was unauthorized. Our caselaw has not addressed specifically the issue of the necessary intent, and we need not address it in this case. However, no cases support the addition of a requirement that the attorney know that the practice is unauthorized. See *Matter of Jackman, supra* at 264 (merely stating that Jackman "knew that [the nonlawyer] was handling personal injury claims and managing the office without adequate supervision"). See also *Matter of Luongo*, 416 Mass. 308, 311 (1993) (not requiring knowledge element on charge of assisting in unauthorized practice, but using Luongo's "knowing participation" as matter in aggravation on issue of appropriate sanction).

Similar to *Jackman*, the respondent was aware of the extent of Porter's practice before the MCAD, was aware that Porter's practice was unsupervised, did not arrange for his actions to be supervised, and was aware that Porter was not an attorney. At best, the respondent's defense is that, because he was not aware that Porter's activities, as permitted and arranged by the respondent, amounted to the unauthorized practice of law, he cannot be held liable for assisting in that practice. This is not a sufficient defense. See *Matter of the Discipline of an Attorney,*

[5]However, the respondent also testified that he understood Porter could only represent clients at the MCAD pursuant to an attorney's appearance, and allowed Porter to sign the respondent's name on all appearances. Furthermore, even after the MCAD sent a letter stating that Porter's appearances before the MCAD were not allowed, he did not fire Porter or arrange for attorney supervision of Porter's discrimination practice.

[6]See, e.g., S.J.C. Rule 1.8 (a), 426 Mass. 1338 (1998) (lawyer shall not knowingly acquire pecuniary interests adverse to client); S.J.C. Rule 3.3, 426 Mass. 1383 (1998) (lawyer shall not knowingly engage in conduct that violates requirement of candor before a tribunal); S.J.C. Rule 3.4 (c), 426 Mass. 1389 (1998) (lawyer shall not knowingly disobey obligation under rules of tribunal).

392 Mass. 827, 835 (1984) ("There have been, and will be, few cases of unethical conduct where we consider it relevant that an offending attorney was not aware of the disciplinary rules or their true import").

Here, the respondent's conduct in knowingly facilitating Porter's unsupervised discrimination practice clearly falls within the ambit of assistance in the unauthorized practice of law, and this holding upholds the purpose of the rule forbidding an attorney from assisting in the unauthorized practice of law — that is, the protection of the public from the rendition of legal services by unqualified persons. Comment 1 to Mass. R. Prof. C. 5.5.

5. *Sanctions.* The board recommended a term suspension of one year and one day. In reviewing the board's recommended sanction, we consider whether the recommended sanction "is markedly disparate from judgments in comparable cases." *Matter of Finn*, 433 Mass. 418, 423 (2001). See *Matter of Kerlinsky*, 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999). Regardless, "[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Matter of the Discipline of an Attorney*, *supra* at 837. The consideration of the cumulative effects of several ethical violations is proper when determining the appropriate sanction. *Matter of Saab*, 406 Mass. 315, 326-327 (1989).

The respondent argues that the appropriate sanction for his disciplinary violations is a three-month suspension. He claims that because he merely failed to supervise Porter adequately, instructed him on the appropriate use of fee agreements and the handling of client funds, took steps to determine whether Porter's practice at the MCAD was allowed, and made efforts to identify Porter as a paralegal, the sanction recommended by the board would be disproportionate to other similar cases. Conversely, bar counsel argues that the board's recommended sanction of one year and one day is the minimum required to address the respondent's misconduct.

We agree with the board's recommended sanction of one year and one day, as it is not disparate from sanctions imposed in similar cases. The board, in affirming the subsidiary findings of the hearing committee and adding conclusions that the respondent

assisted in the unauthorized practice of law, formed a business entity with Porter, and made false, deceptive, or misleading communications, determined that the respondent violated several of the rules of professional conduct in connection with collaboration with Porter; and further violated other rules of professional conduct on unrelated charges involving the respondent's trust account records, financial assistance to clients, and business transactions with clients. These conclusions are well supported by the record.

The sanction for similar cumulative misconduct in previous cases has varied, depending on the severity of the misconduct. In *Matter of Jackman*, 444 Mass. 1013, 1014 (2004), this court stated that "with respect to the misconduct involving fee splitting, inadequate supervision of nonlawyers, and assisting in the unauthorized practice of law, a term suspension is warranted." See *Matter of Luongo*, 416 Mass. 308, 311 (1993) ("standing alone, the attorney's knowing participation in the practice of law with [a nonlawyer] warrants at least a suspension from the practice of law, where the attorney obtained financial gain from the association and clients were defrauded"). Jackman was suspended for two years for his improper association with nonlawyers and negligent misuse of client funds, each of which caused harm to clients and warranted a term suspension. *Matter of Jackman, supra* at 1014-1015. As noted by both the respondent and bar counsel, the misuse of client funds as a result of Jackman's inaction is a significant difference between *Jackman* and the respondent's case. See *Matter of Wysocki*, 16 Mass. Att'y Discipline Rep. 437 (2000) (two-year suspension for assisting disbarred lawyer's practice [without fee split or financial benefit], taking cases from disbarred lawyer without consent, neglect, commingling, and record-keeping violations); *Matter of DiCicco*, 6 Mass. Att'y Discipline Rep. 83, 89 (1989) (two-year suspension for assisting in unauthorized practice of law by paralegal, including representing that paralegal was "of counsel," neglect of cases, and other misconduct). Conversely, the respondent's infractions were less egregious, particularly in light of his belief, albeit misguided, that all of Porter's actions were sanctioned by the MCAD. Accordingly, we conclude that a suspension of less than two years is appropriate, as the cases imposing a two-year

suspension involve conduct more severe than the respondent's actions in this case.

The respondent relies on cases where the sanction for similar misconduct was less than one year. In *Matter of Dash*, 22 Mass. Att'y Discipline Rep. 179 (2006), the attorney was suspended for six months and one day for setting up a tort practice with a paralegal, letting the paralegal manage and settle cases, letting the paralegal control his IOLTA account, and failing to supervise the paralegal. In contrast to the respondent's case, the misconduct at issue in *Dash* did not result in any loss or injury to the rights or interests of any client, the arrangement with the paralegal only lasted for a matter of months, and there were no additional instances of misconduct separate from Dash's arrangement with the paralegal. *Id.* at 179-180. In *Matter of Holzberg*, 15 Mass. Att'y Discipline Rep. 264, 265-267 (1999), an attorney received a public reprimand for allowing a paralegal to manage one client's case with very little supervision, and the paralegal mishandled the client's money. The client was not prejudiced by the paralegal's actions. *Id.* at 266. In contrast, the respondent here engaged in misconduct that spanned three years, involved at least forty clients, and resulted in prejudice to the claims of numerous clients. See *Admonition No. 00-23*, 16 Mass. Att'y Discipline Rep. 482, 483 (2000) (attorney assisted in unauthorized practice of law; however, no clients interests were harmed, fees were not shared with paralegal, and representation by paralegal was limited to Social Security claims). Each case relied on by the respondent is distinguishable from the respondent's case and supports the conclusion that the respondent's conduct in connection with Porter, which resulted in injury and prejudice to multiple clients, in addition to his record-keeping and other violations, warrants the suspension of the respondent for the recommended sanction of one year and one day.

6. *Disposition.* A judgment shall enter suspending the respondent from the practice of law in the Commonwealth for one year and one day.

*So ordered.*