NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13268

IN THE MATTER OF ABBY R. WILLIAMS.


February 23, 2023.


Attorney at Law, Disbarment, Misuse of client funds.


The respondent attorney, Abby R. Williams, appeals from the judgment of a single justice of this court disbarring her from the practice of law.[1]  The matter came before the single justice on the information and record of proceedings filed by the Board of Bar Overseers (board).  The board determined, inter alia, that the respondent intentionally misused client trust funds, resulting in ongoing deprivation to clients.  The board recommended, and the single justice ordered, that the respondent be disbarred.  We affirm.

1.  Prior proceedings.  On September 9, 2019, bar counsel filed a seven-count petition for discipline against the respondent.  Counts one, two, and four alleged that as to three sets of clients, the respondent intentionally misrepresented costs and intentionally misused client trust funds with ongoing deprivation resulting.[2]  Through counsel, the respondent filed an

_____

[1] We have reviewed the respondent's preliminary memorandum and appendix, as well as the record that was before the single justice.  Pursuant to S.J.C. Rule 2:23, 471 Mass. 1303 (2015), we dispense with further briefing and oral argument.

[2] Specifically, as to counts one and two, the petition alleged that the respondent's conduct violated Mass. R. Prof. C. 1.15 (b) (segregation of trust property), 1.15 (c) (prompt notice and delivery of trust property to client or third person), 1.15 (d) (1) (accounting), 1.15 (d) (2) (accounting), and 1.15 (f) (1) (C) (individual client records), as appearing

answer denying these allegations; these three counts are the only counts at issue on appeal.[3]

The matter was referred to a hearing committee of the board.  After an evidentiary hearing at which the respondent was represented by counsel, the committee filed a report of its findings of fact and conclusions of law and recommended that the respondent be disbarred.  The board thereafter considered the respondent's appeal and issued a report generally adopting the hearing committee's report and recommendation;[4] an information

---

in 471 Mass. 1380 (2015) and 440 Mass. 1338 (2004); Mass. R. Prof. C. 5.1 (a) (managerial authority over lawyers) and 5.1 (b) (supervisory authority over lawyers), as appearing in 471 Mass. 1445 (2015) and 426 Mass. 1405 (1998); Mass. R. Prof. C. 5.3 (a) (managerial authority over nonlawyers) and 5.3 (b) (supervisory authority over nonlawyers), as appearing in 471 Mass. 1447 (2015) and 426 Mass. 1408 (1998); and Mass. R. Prof. C. 8.4 (c) (dishonesty, fraud, deceit, or misrepresentation), 8.4 (d) (conduct prejudicial to administration of justice), and 8.4 (h) (fitness to practice law), as appearing in 471 Mass. 1483 (2015), and as amended, 429 Mass. 1301 (1999).  As to count four, the petition alleged violations of the same rules except that it did not allege a violation of Mass. R. Prof. C. 1.15 (d) (2); in addition, it alleged violations of Mass. R. Prof. C. 1.1, as appearing in 471 Mass. 1311 (2015) (competence), and Mass. R. Prof. C. 1.3, as appearing in 471 Mass. 1318 (2015) (diligence).

[3] With respect to the remaining counts, the petition alleged that the respondent failed to properly make or maintain a three-way reconciliation of her Interest on Lawyers' Trust Account (IOLTA), failed to make or maintain a proper check register for her IOLTA, failed to make or maintain individual client ledgers and a ledger of personal funds in her IOLTA for fees and expenses, failed to cooperate with bar counsel's investigation, and failed to comply with the order of administrative suspension issued by the single justice.  In an amended answer filed shortly before her hearing, the respondent admitted these violations.

[4] The board did not adopt the hearing committee's conclusion with respect to count one that providing a false settlement breakdown to a private client was prejudicial to the administration of justice in violation of rule 8.4 (d).  That finding is not specifically at issue here, and so we do not separately address it.

was filed in the county court. A single justice of this court reviewed the record, accepted the board's recommendation, and a judgment of disbarment entered. The respondent appealed pursuant to S.J.C. Rule 2:23, 471 Mass. 1303 (2015).

2. Facts found by the committee and adopted by the board. We summarize the relevant factual findings of the hearing committee, as adopted by the board. We agree with the single justice that the findings are supported by substantial evidence. See S.J.C. Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009).

The respondent was admitted to the Massachusetts bar in 1991, and in 1996 or 1997, she established the law firm "Abigail Williams & Associates, P.C.," of which she was the sole owner, officer, and managing partner. In 2015, the respondent transitioned the firm to a limited liability company, founding "Abigail Williams & Associates, L.L.C." Respondent retained control of the new entity.

From July 2007 to July 2013, the respondent's firm employed Ross Annenberg as an associate attorney. While working for the respondent's firm, Annenberg misused client funds for his own benefit by inflating costs, among other methods. By the end of July 2013, the respondent had ended Annenberg's employment with her firm. Annenberg was subsequently disbarred and pleaded guilty to criminal charges arising from his misconduct. See Matter of Annenberg, 31 Mass. Att'y Discipline Rep. 8, 8 (2015).

Although the respondent contends that Annenberg was responsible for the misappropriation of client funds in the three cases at issue in counts one, two, and four, the hearing committee found that it was the respondent who personally and intentionally committed the misconduct. In addition to the case-specific facts described infra, the hearing committee found that the respondent's firm suffered serious ongoing financial problems and that the respondent borrowed money to pay the firm's employees and to cover the firm's other costs. And while Annenberg primarily handled the firm's nonmedical malpractice personal injury cases, it was the respondent who primarily handled the firm's medical malpractice cases. Consistent with this practice, the respondent, not Annenberg, calculated costs for the medical malpractice cases.

a. Count one. Count one concerned the respondent's representation of two clients in a medical malpractice case. In 2012, the lawsuit settled. Minus a portion of the funds paid to

a life insurance company and placed in a structured settlement, the settlement proceeds were deposited in the respondent's Interest on Lawyers' Trust Account, an account for which the respondent was the only signatory. The respondent's firm was entitled to $33,392.78 in costs but paid itself $160,000 in costs. The difference of $126,607.22 was never paid to the clients. On appeal, the respondent does not dispute these numbers.

When the respondent's firm paid itself in June 2012, it did not provide the clients with the contemporaneous accounting required under Mass. R. Prof. C. 1.15. Partial payment was made to the clients by way of a check, and a copy of this check bore the respondent's handwritten notations computing costs in the inflated amount of $160,000. The respondent testified that she made these notations at the time of the relevant disbursement. In addition, the evidence included an undated worksheet on which the respondent made a correction as to the specific amount of the costs charged to the clients.

In about February 2013, one of the clients called the firm and requested an itemization of the costs. In answer to this request, the respondent signed the cover letter accompanying a purported settlement breakdown. But as to costs, the breakdown included only a one-line total of $160,000 and not an itemization as the client had requested.

b. Count two. In a second case, the respondent represented a client individually and as administrator of an estate in a medical malpractice case arising out of the death of the client's husband, and an administrator de bonis non subsequently was appointed for the husband's estate. In 2012, the lawsuit settled as to one of the defendants. The respondent's firm was entitled to $59,736.90 in costs from the settlement. Nevertheless, the respondent later provided the administrator with a settlement statement asserting costs in the amount of $195,171.17. The respondent does not dispute the proper amount of costs, nor does she dispute that the ultimate costs were inflated. The $135,434.27 difference between the proper and inflated costs was never paid to the client.

As the hearing committee determined, the respondent's firm improperly billed two specific items as costs, and the respondent intended these overcharges. First, the client was billed for a consulting attorney's fees, which were not costs. Second, and more pertinent to the issues before this court, the client was billed for $11,816.36 in costs associated with a so-

called nonattorney "consultant."  In fact, this person was an employee of the respondent's firm who did not receive any compensation for her work on the case apart from her ordinary wages.  Moreover, the $11,816.36 was not a fee associated with legal or consulting work but rather represented the respondent's repayment of a loan she personally received from the employee.[5]

The settlement breakdown that falsely inflated these costs was provided to the estate administrator only after the administrator made a personal request to the respondent, and even then, it was delayed by more than two months.  The settlement breakdown contained only a one-line total of the costs, and the administrator never received a detailed breakdown.  The settlement breakdown was signed by one of the respondent's employees as "Legal Assistant to Abigail R. Williams."

c.  Count four.  In a third case, the respondent represented the personal representative of an estate in a medical malpractice action.  The case was settled as to two defendants.  After trial, judgment entered in favor of the third defendant.  The client did not receive any proceeds from the second settlement but believed that, by agreement, the respondent was withholding funds to cover the expenses of the appeal.  In September 2016, the respondent's firm filed a notice of appeal.  The notice was filed thirty-two days after the judgment.  A full year after filing of the notice, the client inquired about the status of the appeal, and the respondent replied, "we are still trying to perfect the record," and "the guy working on it with us is almost done with his portion."  But nothing substantive was being done to advance the appeal.

In November 2017, the defendant served a motion to dismiss the appeal, in part because the notice of appeal was untimely. See Mass. R. A. P. 4 (a) (1), as amended, 464 Mass. 1601 (2013) (thirty-day deadline).  On January 29, 2018, defense counsel filed the motion to dismiss and represented in an affidavit that no opposition had been received.  See Rule 9A of the Rules of the Superior Court (2016).  The court allowed the motion, and the appeal was dismissed on February 1, 2018.  In sum, the record reflects that a notice of appeal was filed late and that no substantive efforts were made to prosecute the appeal.  The respondent never told the client about the dismissal.  The client had to learn this fact through others.

---

[5] By the time she was repaid, the employee had ceased working for the respondent.

In September and October 2018, seven months after the appeal was dismissed, the client asked the respondent multiple times for documentation and for payment of settlement funds remaining from prior settlements with other defendants in the case. The respondent provided a settlement breakdown that contained a total for costs related to the appeal but did not include a detailed statement of those costs. The settlement breakdown asserted $18,819.09 in costs related to the failed appeal, which costs had been deducted from the client's payment. In fact, the true costs related to the failed appeal amounted to $8,000.76, a difference of $10,818.33. The respondent does not dispute the proper amount of these costs.

3. Sufficiency of the evidence of misconduct. We "review the record to determine whether the single justice's decision is supported by sufficient evidence, free from errors of law, and free from any abuse of discretion." Matter of Zankowski, 487 Mass. 140, 144 (2021), quoting Matter of Tobin, 417 Mass. 92, 99 (1994). "The subsidiary facts found by the board must be upheld 'if supported by substantial evidence'" in the record. Matter of Zankowski, supra, quoting S.J.C. Rule 4:01, § 8 (6). "'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." Matter of Slavitt, 449 Mass. 25, 30 (2007), quoting G. L. c. 30A, § 1 (6). Moreover, "[w]e will not disturb the hearing committee's credibility determinations," as "[t]he hearing committee . . . is the sole judge of credibility, and arguments hinging on such determinations generally fall outside the proper scope of our review." Matter of Diviacchi, 475 Mass. 1013, 1018-1019 (2016), quoting Matter of McBride, 449 Mass. 154, 161-162 (2007). As to its conclusions regarding the alleged violations, "the hearing committee's ultimate findings and recommendations, as adopted by the board, are entitled to deference, although they are not binding on this court." Matter of Laroche-St. Fleur, 490 Mass. 1020, 1023 (2022), quoting Matter of Diviacchi, supra at 1019.

The respondent does not dispute any facts found by the board, nor does she dispute the figures determined by the board to be the appropriate amount of costs in the cases at issue. On the contrary, the respondent states, "There was no dispute that the expenses were inflated. The question was who inflated them, Respondent or Annenberg." The respondent contends that her "inattention to these finances allowed Annenberg to steal client funds by improperly inflating the expenses related to the three matters at issue." In sum, the respondent does not dispute the facts found by the hearing committee and adopted by the board

but argues that they were insufficient to establish that she personally and intentionally committed the contested violations.

Drawing on her argument that the evidence was insufficient to demonstrate her own culpability, the respondent concludes that the single justice improperly shifted the burden of proof. She argues that the single justice improperly required that she affirmatively demonstrate that it was Annenberg who inflated client expenses. We disagree. The single justice concluded that "there was substantial evidence that it was the respondent who intentionally charged inflated expenses on the three matters at issue, that she was aware that the expenses were inflated, and that she was motivated in part by financial pressures on her firm."

This conclusion is supported by ample evidence in the record, and we agree with the single justice that the evidence warrants the conclusion that the misconduct at issue was committed personally and intentionally by the respondent. See Matter of London, 427 Mass. 477, 482-483 (1998) (finding no burden shifting, and holding "intent to deprive is a permissible inference" from "false accountings"). In particular, the respondent, not Annenberg, was responsible for the management and calculation of costs for medical malpractice cases. And as to all three disputed counts, the respondent was responsible for providing settlement breakdowns that falsely inflated costs. See Matter of McBride, 449 Mass. at 162 (finding misleading letters drafted at instruction of respondent to be respondent's attempt to hide misappropriation of payments owed to clients); Matter of London, supra. With respect to count two, the respondent used the inflated costs to repay a loan that she had taken. And although the respondent argues that her "inattention to these finances allowed Annenberg to steal client funds," the misconduct related to the late-filed appeal in count four did not occur until years after Annenberg had left her firm.

Moreover, the respondent's attempts to deflect blame to Annenberg largely depended, as the single justice observed, upon her own credibility. But the hearing committee is the sole judge of credibility, see Matter of Diviacchi, 475 Mass. at 1018-1019, and it expressly found the respondent's credibility to be lacking on these precise points. "The hearing committee was under no obligation to believe the respondent's version of the facts" in the face of all the evidence to the contrary, and so there was no "impermissible shift of the burden of proof to the respondent." Matter of London, 427 Mass. at 483. See Matter of Moore, 442 Mass. 285, 291 (2004) ("The disputed

findings were made on ample evidence and were based in large part on the credibility determinations of the hearing committee"); Matter of Macero, 27 Mass. Att'y Discipline Rep. 554, 561-562 (2011) (finding no burden shifting where, as between "natural inference" and respondent's "implausible testimony . . . to explain away these facts, the committee" properly "drew the natural inference"). There was no error in the single justice's determination that the respondent engaged in the misconduct determined by the board.

4. Appropriate sanction. We review de novo the disciplinary sanction imposed by the single justice to determine whether it "is markedly disparate from judgments in comparable cases." Matter of Slavitt, 449 Mass. at 30, quoting Matter of Finn, 433 Mass. 418, 423 (2001). See Matter of Greene, 476 Mass. 1006, 1008 (2016). "When an attorney 'intended to deprive the client of funds, permanently or temporarily, or if the client was deprived of funds (no matter what the attorney intended), the standard discipline is disbarment or indefinite suspension.'" Matter of McBride, 449 Mass. at 163, quoting Matter of Schoepfer, 426 Mass. 183, 187 (1997). Where deprivation is ongoing, as the hearing committee and the board found that it is with regard to the three disputed counts, the presumptive sanction is disbarment. See Matter of Ablitt, 486 Mass. 1011, 1017 (2021); Matter of Bryan, 411 Mass. 288, 291-292 (1991). And we give deference to the board's recommendation, which in this case is disbarment. Matter of Hoicka, 442 Mass. 1004, 1006 (2004).

Disbarment is particularly appropriate where the misappropriation of client funds is accompanied by presence of "numerous aggravating factors" and "the absence of any mitigating factors." Matter of McBride, 449 Mass. at 164. Here, the single justice found no mitigating factors and found multiple aggravating factors, all of which are supported by substantial evidence in the record, including the respondent's experience as an attorney and her lack of candor before the hearing committee. The single justice also properly considered the cumulative effect of the respondent's multiple violations in different cases. See Matter of Hrones, 457 Mass. 844, 855 (2010), citing Matter of Saab, 406 Mass. 315, 326-327 (1989).

Another aggravating factor is the respondent's failure to recognize her own obligations and her repeated attempts to blame others, particularly Annenberg, as described above. This court's admonition in Matter of Ablitt, 486 Mass. at 1019, is applicable here:

"A bar discipline proceeding is not a forum best used broadly to cast blame or aspersions on others. It is a proceeding with a narrow focus: to determine whether there is a preponderance of evidence that an attorney has violated one or more rules of professional conduct and, if so, what sanction is warranted. The respondent's continued focus in these proceedings on matters other than the charged misconduct does [the respondent] a disservice because evidence of misconduct is neither excused nor obscured by accusations of misconduct by others."

For all the foregoing reasons, we agree with the single justice that disbarment was the appropriate sanction and not "markedly disparate from judgments in comparable cases." Matter of Slavitt, 449 Mass. at 30, quoting Matter of Finn, 433 Mass. at 423.

5. Conclusion. The evidence was sufficient to establish that the respondent personally and intentionally misappropriated client funds with deprivation resulting. Disbarment is warranted.

Judgment affirmed.

The case was submitted on the record, accompanied by a memorandum of law.

Alan E. Brown for the respondent.