THE REAL ESTATE BAR ASSOCIATION FOR MASSACHUSETTS,
INC. *vs.* NATIONAL REAL ESTATE INFORMATION SERVICES
& another.[1]

Suffolk. November 2, 2010. - April 25, 2011.

Present: IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.[2]

*Unauthorized Practice of Law. Supreme Judicial Court,* Practice of law. *Attorney at Law,* Approval of title to real estate, Fiduciary duty. *Insurance,* Title insurance. *Real Property,* Conveyance, Deed, Mortgage, Record title. *Contract,* Sale of real estate.

Discussion of the inquiry used to determine whether an activity constitutes the practice of law [517-518], including, in particular, the activities required to transfer title in real estate in Massachusetts [518-520].

This court concluded, based on the limited record before it, that certain activities undertaken by the defendant, a real estate settlement service provider and title insurance agency, did not constitute the unauthorized practice of law, including, in particular, ordering title examinations and abstracts from third parties; obtaining other public records and third-party reports; preparing settlement statements and other mortgage-related forms; reviewing documents to ensure valid execution and delivering documents for recording; disbursing mortgage proceeds; and issuing title insurance commitments and policies to lenders and borrowers as a title insurance agency for underwriters; however, this court could not determine whether other described settlement activities did so, including the defendant's provision of information to clients regarding the legal status of a title and the preparation of deeds. [520-529]

This court was unable to conclude, based on the limited record before it, that certain activities undertaken by the defendant, a real estate settlement service provider and title insurance agency, in contracting with Massachusetts attorneys to attend real estate closings, constituted the unauthorized practice of law. [529-530]

Discussion of the legal principles applicable when determining whether a party that has placed itself as an intermediary between an attorney and a client has a degree of control over the attorney that results in the unauthorized practice of law. [530-532]

Statement that the closing or settlement of real property conveyances requires not only the presence but the substantive participation of an attorney on behalf of the mortgage lender, and that certain services connected with real property conveyances constituted the practice of law in Massachusetts. [532-536]

[1]National Real Estate Information Services, Inc.

[2]Justice Cowin participated in the deliberation on this case prior to her retirement.

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

*Douglas W. Salvesen* (*Anthony B. Fioravanti* with him) for the plaintiff.

*Michael D. Ricciuti* (*Michael DeMarco* with him) for the defendants.

The following submitted briefs for amici curiae:

*William P. O'Donnell, Anthony J. Vigliotti, Robert F. Kelley, John R. Buckley, Jr., F. Sydney Smithers, IV, & Andrea F. Nuciforo, Jr.,* for Register of Deeds for Berkshire County & others.

*Matthew J. Maiona* for New England Chapter of the American Immigration Lawyers Association.

*Martha Coakley,* Attorney General, *& Emily M. Armstrong,* Assistant Attorney General, for the Commonwealth.

*Robert J. Muldoon, Jr., & Jessica G. Kelly* for Massachusetts Bar Association.

*Harvey Weiner & Timothy M. Pomarole* for Legal Assistance Corporation of Central Massachusetts & others.

*Thomas Frisardi & Kendra A. Kinscherf* for North American Bar-Related Title Insurers & another.

BOTSFORD, J. The United States Court of Appeals for the First Circuit has certified two questions to this court in accordance with S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). See *Real Estate Bar Ass'n for Mass.* v. *National Real Estate Info. Servs.,* 608 F.3d 110, 119-120 (1st Cir. 2010) (*REBA III*). The questions arise in the context of litigation pursued by the Real Estate Bar Association for Massachusetts, Inc. (REBA), against defendants National Real Estate Information Services, Inc., and National Real Estate Information Services (collectively, NREIS). See *id.* at 113-114. See also *Real Estate Bar Ass'n for Mass.* v. *National Real Estate Info. Servs.,* 642 F. Supp. 2d 58 (D. Mass. 2009) (*REBA II*); *Real Estate Bar Ass'n for Mass.* v. *National Real Estate Info. Servs.,* 609 F. Supp. 2d 135 (D. Mass. 2009) (*REBA I*). REBA claims that certain activities undertaken by NREIS in Massachusetts constitute the unauthorized practice of law; in making the claim, REBA focuses on NREIS's provision of real estate settlement services to mortgage lenders

514          459 Mass. 512 (2011)

Real Estate Bar Association for Massachusetts, Inc. v. National Real Estate Information Services.

and its issuance of real estate title insurance policies as a title insurance agent. See *REBA III, supra* at 113. The certified questions are as follows:

"1. Whether NREIS's activities, either in whole or in part, based on the record in this case and as described in the parties' filings, constitute the unauthorized practice of law in violation of Mass. Gen. Laws ch. 221, §§ 46 et seq.

"2. Whether NREIS's activities, in contracting with Massachusetts attorneys to attend [real estate] closings, violate Mass. Gen. Laws ch. 221, §§ 46 et seq."

*Id.* at 119-120.[3] For the reasons stated below, we conclude that certain of the real estate settlement activities undertaken by NREIS do not constitute the unauthorized practice of law, but we cannot determine, based on the record before us, whether other of the described settlement activities may do so. As to the second question, the limitations of the record prevent us from providing a definitive answer. Nevertheless, we conclude that the closing or settlement of the types of real estate transactions described in the record require not only the presence but the substantive participation of an attorney on behalf of the mortgage lender, and that certain services connected with real property conveyances constitute the practice of law in Massachusetts.

1. *Background.* REBA initiated this action against NREIS in the Superior Court in November, 2006. The amended complaint alleges that certain business activities of NREIS constitute the unauthorized practice of law in violation of G. L. c. 221, §§ 46 and 46A,[4] and seeks declaratory and injunctive relief pursuant

---

[3]The United States Court of Appeals for the First Circuit also stated: "We would welcome the advice of the [Supreme Judicial Court] on any other relevant aspect of Massachusetts law which it believes would aid in the proper resolution of the issues." *Real Estate Bar Ass'n for Mass.* v. *National Real Estate Info. Servs.*, 608 F.3d 110, 120 (1st Cir. 2010) (*REBA III*).

[4]General Laws c. 221, §§ 46 and 46A, prohibit unauthorized corporations, associations, and individuals from practicing law on behalf of anyone other than themselves in Massachusetts. Section 46 provides in relevant part:

"No corporation or association [other than those specifically authorized to practice law] shall practice or appear as an attorney for any person other than itself in any court in the commonwealth or before any judicial body or hold itself out to the public or advertise as being entitled to

Real Estate Bar Association for Massachusetts, Inc. *v.* National Real Estate Information Services.

to G. L. c. 221, § 46B.[5] The challenged activities include services NREIS provides in connection with Massachusetts mortgage transactions that REBA claims are integral components of real estate "conveyancing." REBA also challenges NREIS's issuance of real estate title insurance policies as a title insurance agent for underwriters.[6] NREIS removed the case to the United States District Court for the District of Massachusetts on diversity grounds, and counterclaimed pursuant to 42 U.S.C. § 1983 (2006) that REBA's lawsuit violated the dormant commerce clause, art. 1, § 8, cl. 3, of the United States Constitution. On cross motions for summary judgment, a District Court judge allowed NREIS's motion, concluding as a matter of law that NREIS's activities did not constitute the unauthorized practice of law in Massachusetts. See *REBA I*, 609 F. Supp. 2d at 143-144. The judge also found in favor of NREIS on its counterclaim and ordered REBA to pay attorney's fees and costs in the amount of $904,076.17. See *REBA II*, 642 F. Supp. 2d at 73. REBA appealed, and the Court of Appeals vacated the District Court judgment on the unauthorized practice of law claim. *REBA III*, 608 F.3d at 117-118. The court concluded that there was "no controlling precedent that establishes a definition for 'conveyancing' or the extent of activities that constitute conveyancing," and certified the two questions set forth above to this court.[7] *Id.* at 118, 126.

---

practice law, and no corporation or association shall draw agreements, or other legal documents not relating to its lawful business, or draw wills, or give legal advice in matters not relating to its lawful business, or practice law, or hold itself out in any manner as being entitled to do any of the foregoing acts . . . ."

General Laws c. 221, § 46A, provides in relevant part:

"No individual, other than a member, in good standing, of the bar of this commonwealth shall practice law, or . . . hold himself out as authorized, entitled, competent, qualified or able to practice law . . . ."

[5]General Law c. 221, § 46B, confers concurrent equity jurisdiction on this court and the Superior Court to enjoin violations of G. L. c. 221, §§ 46 and 46A, and it also confers standing to bring suit regarding alleged violations on bar associations, members of the bar, district attorneys, and the Attorney General.

[6]The record reflects that only National Real Estate Information Services acts as a title insurance agent in Massachusetts; National Real Estate Information Services, Inc., does not.

[7]The Court of Appeals reversed the grant of summary judgment in favor of

We briefly set forth the relevant facts, based on the parties' pleadings and the prior proceedings, reserving additional details for our discussion of the questions. REBA is a Massachusetts bar association with approximately 3,000 real estate attorneys as members. REBA was formerly known as the Massachusetts Conveyancers' Association, Inc., and the organization has a long history of attempting, through both legislation and litigation, to confine conveyancing activities in the Commonwealth to Massachusetts attorneys. See *REBA III, supra* at 115-116, and cases cited. NREIS is a business entity based in Pennsylvania.[8] NREIS describes itself as both a multi-State real estate settlement services provider, or "vendor manager," and a title insurance agency. The record before us does not demonstrate that any NREIS employee is licensed to practice law in Massachusetts.

As a vendor manager, NREIS provides services for mortgage lenders related to the settlement, or closing, of real estate mortgage transactions. These services may include some or all of the following: (1) contracting for title examination searches relating to specific properties to be performed by third parties; (2) obtaining other third-party reports or public records relating to those properties; (3) contracting with a third party to draft deeds for mortgage loan transactions if a lender so requests; (4) drafting Federal HUD-1 or HUD-1A settlement statements; (5) arranging for a Massachusetts attorney to attend a "closing" on behalf of the lender; (6) transmitting the lender's documents to the closing attorney prior to the actual closing, and reviewing those documents postclosing for proper execution; (7) ensuring the recording of documents related to the mortgage at the appropriate registry of deeds; and (8) disbursing settlement funds. REBA claims that many if not all of these activities, at least when undertaken in the context of "conveyancing," constitute or involve the practice of law and therefore must be performed, supervised, or overseen by an attorney. NREIS, on the other hand, describes its vendor management services as "managerial, admin-

NREIS on its counterclaim, reversed all relief awarded on it, and vacated the award of attorney's fees and costs. See *REBA III*, 608 F.3d at 126. We need not discuss the counterclaim.

[8]National Real Estate Information Services, Inc., is a Pennsylvania corporation and the general partner of National Real Estate Information Services, a Pennsylvania limited partnership.

istrative, clerical or ministerial," and maintains that in performing them, it is not practicing law.

As a title insurance agency, NREIS issues title insurance commitments and policies to both lenders and borrowers on behalf of title insurance underwriters. To issue a policy, NREIS takes the information from a title examination conducted by a third party and creates a title commitment based on guidelines promulgated by the particular underwriter for which NREIS is acting as an agent. NREIS then issues the title insurance policy to the lender or borrower consistent with the requirements and exceptions outlined in the title commitment. REBA maintains that because issuing title insurance policies requires some examination of the legal title to a property, NREIS is engaging in the unauthorized practice of law.

2. *Practice of law.* The two certified questions focus on the unauthorized practice of law; to answer them, of course, we must be concerned in the first instance with what constitutes the practice of law. The subject is one within the exclusive power of the courts to determine. *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. 176, 180 (1943) (judicial department "is necessarily the sole arbiter of what constitutes the practice of law" in Massachusetts). Nevertheless, as G. L. c. 221, §§ 46-46B, illustrate, the Legislature may assist the judiciary in enforcing and discharging the duty to control the practice of law with appropriate statutory enactments. See *Opinion of the Justices*, 289 Mass. 607, 612 (1935). The purpose in limiting the practice of law to authorized members of the bar is not to protect attorneys from competition but rather to protect the public welfare. *Lowell Bar Ass'n* v. *Loeb*, *supra*. *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. 369, 372 (1936). See *Opinion of the Justices*, *supra* at 613-614.

"It is not easy to define the practice of law." *Lowell Bar Ass'n* v. *Loeb*, *supra* at 180. Whether a particular activity constitutes the practice of law "must be decided upon its own particular facts" because "it is impossible to frame any comprehensive and satisfactory definition" of the term. *Matter of the Shoe Mfrs. Protective Ass'n*, *supra* at 372. See *Matter of Chimko*, 444 Mass. 743, 749 (2005); *Lowell Bar Ass'n* v. *Loeb*, *supra* at 184. See also *Opinion of the Justices*, *supra* at 613-615. As general observations, we have noted that the practice of

law involves applying legal judgment to address a client's individualized needs, see *Matter of Chimko, supra* at 750, and that custom and practice may play a role in determining whether a particular activity is considered the practice of law, see *Lowell Bar Ass'n* v. *Loeb, supra* at 186. More specifically, we have stated:

> "[D]irecting and managing the enforcement of legal claims and the establishment of the legal rights of others, where it is necessary to form and to act upon opinions as to what those rights are and as to the legal methods which must be adopted to enforce them, the practice of giving or furnishing legal advice as to such rights and methods and the practice, as an occupation, of drafting documents by which such rights are created, modified, surrendered or secured are all aspects of the practice of law."

*Matter of the Shoe Mfrs. Protective Ass'n, supra.* Accord *Matter of Hrones,* 457 Mass. 844, 849-850 (2010). The difficulty, however, is that many of the activities just described are also undertaken by persons in other professions and occupations, and the creation of legally binding obligations and commitments is not confined to lawyers.[9] "The proposition cannot be maintained, that whenever, for compensation, one person gives to another advice that involves some element of law, or performs for another some service that requires some knowledge of law, or drafts for another some document that has legal effect, he is practising law." *Lowell Bar Ass'n* v. *Loeb, supra* at 181. Thus, for an activity to be considered the "practice of law" such that a nonlawyer cannot perform it without committing the unauthorized practice of law, the activity itself must generally fall "wholly within" the practice of law. *Matter of Chimko, supra* at 750. *Lowell Bar Ass'n* v. *Loeb, supra* at 183.

3. *Conveyancing and the practice of law.* As described by the Court of Appeals, the "underlying legal dispute in this case is whether the activities required to transfer title in real estate . . . in whole or in part constitute the practice of law." *REBA III,*

---

[9]For example, accountants routinely provide advice to their clients that requires knowledge and understanding of the law and that also has legal ramifications. Likewise, corporations and individuals routinely prepare and execute many types of legally binding documents without a lawyer. See generally *Lowell Bar Ass'n* v. *Loeb,* 315 Mass. 176, 181-183, 186 (1943).

459 Mass. 512 (2011)                                        519

Real Estate Bar Association for Massachusetts, Inc. v. National Real Estate Information Services.

*supra* at 114. Even though NREIS's vendor management activities primarily involve facilitating mortgage transactions for its lender clients, mortgage transactions are conveyances of title in the Commonwealth because Massachusetts is a so-called "title theory" State.[10] See *Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis*, 458 Mass. 1, 6 (2010), and cases cited. REBA uses the term "conveyancing" to describe the activities required to transfer title in Massachusetts.

Conveyancing is defined as "[t]he act or business of drafting and preparing legal instruments, esp. those (such as deeds or leases) that transfer an interest in real property." Black's Law Dictionary 383 (9th ed. 2009). Modern conveyancing of real property interests, however, typically involves many more activities than merely drafting and preparing legal instruments.[11] See generally K.M. O'Donnell, Handling Residential Real Estate Transactions in Massachusetts (Mass. Continuing Legal Educ. 2d ed. 2007 & Supp. 2009). This court has stated previously that the practice of law "embraces conveyancing." *Opinion of the Justices*, 289 Mass. at 613. See *Fall River Sav. Bank v. Callahan*, 18 Mass. App. Ct. 76, 83 (1984) (discussing "conveyancing" as area of "law practice"). At the same time, we have never held that "conveyancing" is a unitary, indivisible activity that constitutes the practice of law, nor do we do so today. Many of the discrete services and activities that may fall within the penumbra of modern conveyancing do not qualify as the practice

---

[10]There are two types of mortgage transactions principally at issue in this case: purchase money mortgages, where a buyer borrows money from a lender to purchase a residence; and mortgage refinancings, where the current owner of a property signs a new mortgage on the property. In both types of transactions, the mortgage splits the title to the property into two parts — the legal title, which is owned by the lender (the mortgagee), and the equitable title, which remains with the borrower (mortgagor). See *Maglione v. BancBoston Mtge. Corp.*, 29 Mass. App. Ct. 88, 90 (1990).

[11]In its opinion, the Court of Appeals states that while the parties disagree about specifics, they generally agree that the following groups of activities are the necessary components of transferring title, or conveyancing: "inspection of the seller's legal title to the real estate before the transfer and, if necessary, resolution of any flaws in the seller's title to the property; execution of legal documents and the exchange of those documents and promised consideration at a 'closing;' and recording of the legal documents at the registry of deeds." *REBA III*, 608 F.3d at 114. The various services or activities undertaken by NREIS, as they are described in the record, appear to fall within one or another of these three groups.

of law, see, e.g., *Opinion of the Justices*, 289 Mass. at 615, and the talismanic invocation of the word "conveyancing" is not sufficient to require that all of them be performed by or under the supervision of an attorney.[12] Whether a particular service or activity constitutes the practice of law remains a fact-specific inquiry. See *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. at 372.

4. *Question 1.* The first certified question asks whether NREIS's activities that are described in the record "either in whole or in part . . . constitute the unauthorized practice of law." *REBA III*, 608 F.3d at 119. As the previous discussion indicates, we view conveyancing in the real estate context as comprising a series of connected but discrete activities. Accordingly, we do not attempt to characterize NREIS's activities "in whole," but instead examine NREIS's specific services as a vendor manager and a title insurance agent to determine whether any constitute the unauthorized practice of law.

a. *NREIS's vendor management and title examination activities.* (i) *Preclosing: title examinations and title-related services.* The record indicates that national and regional mortgage lenders hire NREIS to provide settlement services needed to close a residential real estate mortgage transaction. When requested, NREIS orders a title examination and receives a report or title "abstract"[13] for that property from a third-party title examiner such as Connolly Title Services, Inc. (Connolly Title).[14] NREIS enters the information it receives into a database in order to

___

[12]REBA's own deponent conceded that many activities performed as part of a modern conveyance, including many of the services provided by NREIS, are not the practice of law when performed independently. Nevertheless, at least as reflected in the record before the District Court, REBA maintained that these activities somehow become the practice of law when performed within the context of a real estate conveyance, and may only be undertaken by or under the direct supervision of an attorney.

[13]A title examination involves a search of the records pertaining to a particular property at the appropriate registry of deeds. Title abstracts typically contain a summary of the search findings and copies of any documents found, and should provide a current description of the property, the names of the current owners, any encumbrances or liens to which the property is subject, and any title defects or clouds on title that may need to be resolved prior to the closing. See J.A. Stein, Title Examinations and Title Issues, Handling Residential Real Estate Transactions § 5.1.2, at 5-4 (Mass. Continuing Legal Educ. 2d ed. 2007 & Supp. 2009).

[14]Connolly Title Services, Inc. (Connolly Title), is not a law firm, and none

generate documents for lenders. NREIS may also obtain other third-party reports or public records that can affect title or ownership of the property, including but not limited to, property appraisals, flood reports, and tax certificates.

As individually considered activities, title examinations and the preparation of title abstracts generally do not constitute the practice of law.[15] Although both require training and some understanding of the law, they are commonly performed by competent nonlawyer professionals.[16] Similarly, the mere ordering of title examinations and title abstracts is not the practice of law. Such activities are routinely done in preparation for conveyancing transactions and require no special legal training. See J.A.

---

of its employees are lawyers. NREIS states that it does not rely on Connolly Title, or on any other third-party vendor, to issue an opinion as to the status of a title.

[15]See *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. 660, 665 (1971) (making reports and even recommendations about information discovered during search at registry of deeds is presumably not practice of law). *Opinion of the Justices*, 289 Mass. 607, 615 (1935) ("search[ing] of records of real estate to ascertain what may there be disclosed" is not practice of law); See also Guideline 26(1) of the Land Court Guidelines on Registered Land at 56 (2009) (providing that official Land Court examiners must be members of bar and must have been admitted for at least three years or have demonstrated equivalent experience such as "experience as a title examiner *prior to* admission to the bar" [emphasis added]). See generally *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. at 181, 186 (activity is not automatically practice of law just because it requires knowledge of law, and custom and practice may play role in determining whether activity is practice of law).

It is true that the specific activities of performing and preparing title examinations and title abstracts may be considered the practice of law when conducted by a lawyer, such that suspended or disbarred attorneys may be prevented from providing such services during the term of suspension or disbarment. See *Matter of Eastwood*, 10 Mass. Att'y Discipline Rep. 70, 75-77 (1994); *Matter of Behenna*, 9 Mass. Att'y Discipline Rep. 17, 17-18 (1993); *Matter of Oates*, 5 Mass. Att'y Discipline Rep. 274, 277-278 (1986). This case is not concerned with suspended or disbarred attorneys, and we do not consider these disciplinary decisions to be particularly apposite.

[16]Nothing in the record specifically indicates that the services provided by Connolly Title constitute the practice of law. As REBA's deponent described it, title examination normally involves hiring a title examiner, who need not be an attorney, to search registry of deeds and other records. As the Court of Appeals observed, Connolly Title "purports only to provide title abstracting services and no legal analysis." *REBA III*, 608 F.3d at 116. We discuss the responsibility of a lender's closing attorney in relation to title searches and abstracts performed by nonlawyers such as the employees of Connolly Title in response to Question 2. See Part 5 (b), *infra*.

Stein, Title Examinations and Title Issues, Handling Residential Real Estate Transactions § 5.1.1, at 5-1—5-2 (Mass. Continuing Legal Educ. 2d ed. 2007 & Supp. 2009). Thus, it would appear from the limited record before us that NREIS's ordering of title examinations and abstracts from third parties like Connolly Title is not the practice of law.[17] For similar reasons, the same appears to be true of NREIS's activities in obtaining other public records and third-party reports such as municipal lien certificates, property appraisals, and flood reports.

The record, however, leaves open questions as to what happens once NREIS has received a title abstract from a third-party title examiner. NREIS states that it takes the information in the title abstract, enters it into its computer system, and transmits it to its lender clients in the form of another document. NREIS further maintains that it does not provide its lender clients with opinions or advice regarding marketability of title — services that would constitute the practice of law[18] — and that the clients determine how to use the information that NREIS obtains and provides to them. NREIS also states that it does not perform title certifications for lenders,[19] and the record before us does not indicate that, prior to closings, NREIS attempts to resolve title defects or encumbrances. This specific description of the activities performed by NREIS would not appear to constitute the practice of law.[20] However, we find no examples of the type of

---

[17]In so responding, however, we emphasize that we focus solely on the discrete activities of conducting title examinations and providing title abstracts by themselves. These services may well constitute the practice of law when they are provided in conjunction with giving legal advice or providing legal opinions about the marketability or quality of the title or on any other subject. See generally *Lowell Bar Ass'n* v. *Loeb, supra* at 183; *Opinion of the Justices,* 289 Mass. at 615. See also Part 5 (b), *infra.*

[18]See note 17, *supra,* and Part 5 (b), *infra.*

[19]Title certification by an attorney is required for certain types of mortgage transactions under G. L. c. 93, § 70, a statute we consider in more depth in connection with our response to Question 2. See Part 5 (b), *infra.* Most of NREIS's vendor management services in Massachusetts are for mortgage refinancing transactions that would not require title certification under G. L. c. 93, § 70.

[20]The record raises, but does not answer, the question whether, consistent with G. L. c. 183, § 63B, the Massachusetts good funds statute, NREIS itself is authorized to retain funds from a mortgage loan made by its lender-client in order to pay off outstanding mortgages and liens on the property that will be securing that loan. We discuss the good funds statute in Part 4 (a) (iii), *infra.*

title-related reports that NREIS sends to its lender clients in the record,[21] and there is little evidence concerning what, if any, other types or forms of communication exist between NREIS and its lender clients relating to status of title of properties. Moreover, REBA argues that one of NREIS's deponents said he understood Connolly Title was performing a "plenary search" of the real estate title and "establishing that there is clear title to the property." This description implies, despite NREIS's express assertions to the contrary, that NREIS relies on Connolly Title to furnish a form of legal opinion about title to its lender clients.[22] As we shall discuss, see Part 5 (b), *infra*, depending on the circumstances, clearing title may involve the practice of law and interpreting the legal status of a title certainly does so. In light of the fact that we cannot discern from the record the precise nature of the information NREIS provides to its lender clients, we are not able to answer with any degree of confidence whether the services that NREIS, and third parties retained by NREIS, provide to lenders in connection with title examinations encroach impermissibly on the practice of law and thereby qualify as unauthorized legal practice.

(ii) *Closing: providing necessary documents*. In addition to its title-related services, NREIS may obtain or prepare certain documents necessary for the closing at the request of its lender clients. Mainly at issue here are real property deeds and real estate settlement forms such as the Federal HUD-1 or HUD 1A settlement statements.[23] Drafting and preparing documents for others, including documents with legal implications, does not automatically constitute the practice of law. See *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. at 181. See also *Matter of Chimko*, 444 Mass. at 749-751 (completing reaffirmation agreement and preparing notice of reaffirmation for pro se bankrupt debtor not practice of law). Whether such activities constitute the practice of law depends to some degree on the type of document, whether

---

[21]Because no examples of the reports NREIS furnishes to lenders appear in the record, we do not know the specific information the documents provide to lenders or for what purposes lenders use them.

[22]This suggestion may also find support in REBA's counsel's argument to this court that NREIS does not forward the title abstract to the attorneys that it retains to attend the closings.

[23]NREIS states that its lender clients provide their own promissory notes and mortgages for all mortgage financing transactions.

legal rights and obligations are being established, whether the document involves providing legal advice or a legal opinion, and whether the document is tailored to address a client's individual legal needs. See *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. at 372.

Because deeds pertaining to real property directly affect significant legal rights and obligations, the drafting for others of deeds to real property constitutes the practice of law in Massachusetts. See *id.* ("drafting documents by which [legal] rights are created, modified, surrendered or secured [is an] aspect[] of the practice of law").[24] See also *Freitas* v. *Freitas*, 349 Mass. 276, 277 (1965) (preparation of deed by real estate broker is "a practice not to be condoned"). There is no evidence before us, however, that NREIS is engaged in the actual drafting of deeds for its lender clients in Massachusetts. What the record does indicate is that NREIS's clients either supply their own deed when one is required for a mortgage financing transaction, or request that NREIS furnish one. When a deed is requested, NREIS engages a Nevada corporation, North American Deed Company, Inc. (DeedPro), to draft it. DeedPro is not a party to this case and, apparently, no person representing or employed by DeedPro was deposed in connection with the litigation.[25] Moreover, there is no evidence before us that NREIS actually has provided a lender client with a deed from DeedPro in connection with a mortgage transaction and associated real estate title transfer in Massachusetts. We conclude, therefore, that on the confined record before us, there is nothing to suggest that NREIS (or DeedPro) is engaging in the unauthorized practice of law in connection with the preparation of deeds, but we are unable to make a more definite or general determination.

On the other hand, NREIS's preparation of settlement statements and other mortgage-related forms for its lender clients

[24]In *Opinion of the Justices*, 289 Mass. at 615, we stated that "occasional drafting of simple deeds, and other legal instruments when not conducted as an occupation or yielding substantial income may fall outside the practice of the law." We understand "occasional drafting of simple deeds" as a reference to deeds that do not necessarily pertain to real property. To the extent that the reference may include real property deeds, we no longer follow the opinion.

[25]NREIS asserts that where a third-party vendor is used to provide a deed, the vendor expressly represents its compliance with a State's unlicensed practice of law statutes. The record does not demonstrate otherwise.

clearly does not constitute the unauthorized practice of law. HUD-1 and HUD-1A settlement statements are standardized forms required under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617 (2006), for all federally regulated mortgages. The forms detail all aspects of the mortgage transaction, including costs, charges, fees, interest rates, and amounts due to various parties. See 12 U.S.C. § 2603(a); 24 C.F.R. § 3500.8(a) (2010). To draft such a settlement statement, NREIS fills in the various blank spaces on the form with information provided by the lender, as well as information that comes from NREIS regarding its fees. It then transmits the filled-in documents to the lender to be reviewed and finalized.

Filling out standard government forms for others is not necessarily the practice of law. See *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. at 185. Many such forms "can readily be filled out by any intelligent" person. *Id.* We see little difference between the income tax forms at issue in the *Lowell Bar Ass'n* case and the federally mandated settlement statements in this case. Although there may be legal consequences that flow from filling out these forms, there is no legal advice or legal opinion being offered, see *id.*, and ultimate control over and responsibility for the content of those forms rests with NREIS's lender clients.

(iii) *Postclosing services: recording documents and disbursing loan proceeds.* Once NREIS has completed its preclosing activities and after the lender has completed its preparation and review of all documents, NREIS or the lender transmits the lender's documents to a Massachusetts attorney for the closing.[26] The closing attorney attends the closing and at its conclusion delivers the completed documents back to NREIS. NREIS employees then review the documents for completeness, make sure the signatures are all there, and send the package of documents to the lender for final review. After the closing, NREIS employees ensure recording of the relevant documents at the appropriate registry of deeds.[27]

Neither reviewing documents to ensure valid execution nor

---

[26]We discuss NREIS's relationship with the closing attorneys it engages for lenders in our answer to the second certified question in Part 5 (a), *infra.*

[27]The record is unclear as to the process by which NREIS assists in recording relevant documents in Massachusetts. NREIS's deponent explained the company "arrange[s] for those documents that are to be recorded to be sent

526                                                459 Mass. 512 (2011)

Real Estate Bar Association for Massachusetts, Inc. *v.* National Real Estate Information Services.

delivering documents to the appropriate registry of deeds for recording constitutes the practice of law.[28] These activities do not themselves require the provision of legal advice or legal opinions, or the application of legal judgment to meet the individual needs of a client. See *Matter of Chimko*, 444 Mass. at 749-751; *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. at 372. While such activities may assist in the creation of legal rights, they are primarily clerical in nature. We are mindful of the important public interest in maintaining the accuracy and reliability of the land recording and registration systems in Massachusetts, but there is no evidence before us that the public welfare is advanced by requiring an attorney to perform or oversee these functions. See *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. at 665 n.4.

NREIS also assists lenders in disbursing mortgage proceeds. As we shall discuss in response to Question 2, closing attorneys have professional as well as statutory obligations to ensure the proper disbursement of mortgage proceeds. Nevertheless, disbursing mortgage funds does not in and of itself qualify as the practice of law, and therefore NREIS's activities in this regard do not constitute the unauthorized practice of law. It is not so clear, however, whether NREIS's activities comply with G. L. c. 183, § 63B, the good funds statute.

The good funds statute requires a lender-mortgagee, prior to recording the mortgage, to disburse all mortgage proceeds due to the borrower-mortgagor either to the mortgagor directly or to an attorney for the mortgagor or for the mortgagee. G. L. c. 183, § 63B.[29] The amount due to the borrower is determined either

---

for recording and we receive back the . . . recording information." However, in its brief, NREIS suggests that a Massachusetts lawyer, presumably the closing attorney, takes charge of recording the necessary documents.

[28]However, a postclosing "rundown" of title to ensure that no encumbrances have been placed on the property prior to recording may constitute the practice of law as part of an over-all determination of marketability of title. See note 45 and accompanying text, *infra*.

[29]General Laws c. 183, § 63B, provides in relevant part:

> "No mortgagee who makes a loan to be secured by a mortgage or lien on real estate located in the commonwealth in conjunction with which, a mortgage deed evidencing the same is to be recorded in a registry of deeds or registry district in the commonwealth, shall deliver said deed or cause the same to be delivered into the possession of such registry of

by the settlement statement or "so much thereof as is designated in the loan agreement." *Id.*

NREIS presumably is permitted to assist lenders as their agent in fulfilling this statutory obligation. See *id.* (mortgagee must "cause[]" such proceeds to be disbursed to mortgagor or attorney). For purchase money transactions, NREIS states that it assists by providing funds to the closing attorney. For refinancing transactions, however, NREIS disburses all mortgage proceeds itself. In particular, NREIS states that it receives refinancing proceeds from the lender after the closing is completed and the three-day mortgage rescission period has expired. NREIS then disburses the mortgage proceeds and records or confirms the recording of the relevant documents, but the record is not entirely clear as to which happens first or to whom the proceeds are disbursed. It is possible that some of these actions may violate the good funds statute, G. L. c. 183, § 63B. However, because we do not have any evidence of the actual loan agreements or settlement statements before us, and because we do not know the precise order in which various activities take place, on this limited record, we cannot determine whether this is so.

b. *NREIS's issuance of title insurance.* In addition to its vendor management services, NREIS issues title insurance commitments and policies to lenders and borrowers as a title insurance agency for underwriters.[30] As we described in Part 4 (a) (i), *supra*, NREIS orders a title examination and abstract from a third party such as Connolly Title. It uses the information in the

deeds or registry district for the purpose of the recording thereof unless prior to the time said deed is so delivered for recording, said mortgagee has caused the full amount of the proceeds of such loan due to the mortgagor pursuant to the settlement statement relevant thereto given to said mortgagor or in the instance of any such loan in which the full amount of the proceeds due to the mortgagor pursuant to the terms thereof are not to be advanced prior to said recording, so much thereof as is designated in the loan agreement, to be transferred to the mortgagor, the mortgagor's attorney or the mortgagee's attorney in the form of a certified check . . . ."

[30]The title insurance underwriters for which NREIS serves as an agent in the Commonwealth include Stewart Title, First American, Ticor Title, and Old Republic. Title insurance is often required by lenders. See M.E. Brust, Common Practices to Close the Sale, Handling Residential Real Estate Transactions in Massachusetts § 8.3.9(f), at 8-17 (Mass. Continuing Legal Educ. 2d ed. 2007 & Supp. 2009) (Brust, Common Practices to Close the Sale).

title abstract in combination with guidelines provided by the underwriter to fill out one of the underwriter's title commitment forms. NREIS then issues a title insurance policy consistent with the coverage requirements and exceptions listed in the title commitment.

The issuance of insurance policies generally does not constitute the practice of law in Massachusetts. See, e.g., *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. at 181-182 (discussing activities of insurance agents in context of practice of law). Insurance policies are examples of those types of common contractual instruments "fraught with substantial legal consequences . . . that in the course of recognized occupations other than the practice of law are often drawn by laymen for other laymen." See *id.* at 186. Nevertheless, REBA contends that because title examination requires the application of judgment as to what constitutes a defect and so must involve either an analysis of or an opinion on the legal status of title, NREIS's activities constitute the practice of law.

Title insurance policies provide protection for buyers and lenders "against defects in, or liens or encumbrances on, title." *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 428 (1995). "Title insurance is neither an agreement to guarantee the state of title, nor a representation of title . . . ." *Private Lending & Purch., Inc.* v. *First Am. Title Ins. Co.*, 54 Mass. App. Ct. 532, 536 (2002). Issuing title insurance also imposes no general duty on a title insurer to search for or disclose defects in title. See *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, supra at 430. Instead, title insurance creates a contractual obligation on the part of the underwriter to warranty against encumbrances not specifically excepted by the terms of the policy. See *id.*; *Private Lending & Purch., Inc.* v. *First Am. Title Ins. Co.*, supra, and cases cited.

Corporations have long issued title insurance policies in the Commonwealth. See, e.g., *Dorr* v. *Massachusetts Title Ins. Co.*, 238 Mass. 490, 494 (1921). See also G. L. c. 175, § 47, Eleventh (authorizing incorporation of title insurance companies). Moreover, this court has identified "providing title insurance" as an example of "services that . . . are not prohibited as unauthorized practice of law when provided by a nonlawyer." Mass. R. Prof. C. 5.7 (b) & comment [9], 426 Mass. 1412 (1998).

459 Mass. 512 (2011) 529

Real Estate Bar Association for Massachusetts, Inc. *v.* National Real Estate Information Services.

Massachusetts statutory and judicial authority, as well as long-standing custom and practice, thus make it clear that the issuance of title insurance commitments and policies is not the practice of law. See *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. at 181-182. Accordingly, the activities conducted by NREIS as a title insurance agent do not constitute the unauthorized practice of law.

5. *Question 2.* a. *Contracting with Massachusetts attorneys.* The second certified question asks "[w]hether NREIS's activities, in contracting with Massachusetts attorneys to attend [real estate] closings" constitute the unauthorized practice of law. *REBA III*, 608 F.3d at 120.

The record includes the following facts pertinent to this inquiry. When a lender contacts NREIS about a mortgage closing, NREIS engages a Massachusetts attorney to represent the lender and attend the closing. It appears that the lender, or at any rate a person or entity other than NREIS, selects the closing date and location. NREIS selects a closing attorney from a list it maintains of approximately seventy-four attorneys. NREIS then provides the attorney with telephone numbers for the parties and information about the delivery of the closing documents. NREIS and its lender client then complete their other preclosing activities. Once the closing documents are ready, including the HUD settlement statement and the mortgage and promissory note prepared by the lender, NREIS or the lender provides the documents, along with the lender-issued closing instructions, to the closing attorney.[31] The attorney attends the closing and delivers the executed closing package back to NREIS. NREIS and the lender each review the documents after the closing. The attorney is paid to attend the closing.

This is the entirety of the relevant record information. No closing attorney engaged by NREIS is party to this lawsuit[32]

---

[31]The record before us does not provide the full list of instructions and documents sent to the closing attorney. Typical documents prepared for or before a real estate closing include, but are not limited to, the HUD settlement statement, the promissory note, the mortgage, truth-in-lending disclosures, a rescission statement where applicable, title certification where applicable, title insurance, and other miscellaneous documents. See Brust, Common Practices to Close the Sale, *supra* at § 8.3.9, at 8-14—8-19. Some of these, such as title certification and title insurance, can be completed only once the recording· is complete. See *id.* at § 8.3.9(f), at 8-17.

[32]Mark S. Solomon, one of the Massachusetts closing attorneys engaged by

530 459 Mass. 512 (2011)

Real Estate Bar Association for Massachusetts, Inc. *v.* National Real Estate Information Services.

nor, it appears, has any such closing attorney been deposed in connection with it.[33] NREIS maintains that it does not instruct the closing attorneys whom it retains except as necessary to facilitate the relationship between the lender clients and the attorneys, and that it does not tell the attorneys how to conduct the closing or fulfil their legal, professional, and ethical obligations to the lender clients. However, there is little evidence in the record regarding communications between NREIS and its retained closing attorneys or between NREIS's lender clients and the closing attorneys. There is also no evidence about what, if any, legal work the closing attorneys undertake prior to the closing, and nothing specific about what role they actually play in the closings. Because the record does not inform us about the relationship that exists between the closing attorneys and NREIS, or between the closing attorneys and NREIS's lender clients, we cannot determine whether, in contracting with these attorneys, NREIS is engaging in the unauthorized practice of law.[34] Thus, we are not able to answer Question 2 directly. Nevertheless, in light of the request for advice that "would aid in the proper resolution of the issues," *REBA III*, 608 F.3d at 120, we add the following.

As previously stated, "directing and managing the enforcement of legal claims and the establishment of the legal rights of others . . . are all aspects of the practice of law." *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. at 372. Accord *Matter of Hrones*, 457 Mass. at 849-850. On the confined record before us, it does not appear that NREIS is itself actively directing and managing the establishment of legal rights of others in a manner that would constitute the unauthorized practice of law.[35]

NREIS, was named as a defendant in the amended complaint filed in the Superior Court, but was dismissed when the case was removed to United States District Court.

[33]REBA appears to have made a strategic decision not to sue attorneys who perform these types of closings. Notably, at least four of the attorneys who were named and deposed as representatives of REBA or their firms have performed similar closings on behalf of entities like NREIS.

[34]Nor, for that matter, can we determine whether the attorneys contracting with NREIS to attend and conduct the closings are fulfilling their professional and ethical obligations to their lender clients. See Part 5 (b), *infra*.

[35]For two recent decisions illustrating this type of case, see *Matter of Hrones*, 457 Mass. 844, 850 (2010) (attorney assisted in unauthorized practice of law in violation of disciplinary rules where nonlawyer in attorney's office

459 Mass. 512 (2011)                                          531

Real Estate Bar Association for Massachusetts, Inc. v. National Real Estate Information Services.

Rather, we think the case is closer to one where a party places itself as an intermediary between an attorney and a client. When a third party interposes itself between an attorney and a client, the key question is who exercises and retains control over the attorney. See *Joffe* v. *Wilson*, 381 Mass. 47, 53-54 (1980). The practice of law is personal, confidential, and fiduciary. See *Matter of Maclub of America, Inc.*, 295 Mass. 45, 49-50 (1936); *Opinion of the Justices*, 289 Mass. at 613. A third party may facilitate the creation of a relationship between an attorney and a client, and also may pay the legal bills of the client. See *Matter of Thibodeau*, 295 Mass. 374, 377-379 (1936) (automobile association could pay legal fees incurred by association members who engaged attorneys recommended by association where ultimate control over attorneys' conduct of litigation lay with members). However, there must be a genuine attorney-client relationship, and direction and control over the attorney's actions cannot rest with that third party.[36] See *Joffe* v. *Wilson, supra* at 52-54. See also Mass. R. Prof. C. 5.4 (c), as appearing in 430 Mass. 1303 (1999) ("A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services"); Mass. R. Prof. C. 1.8 (f), 426 Mass. 1338 (1998) ("A lawyer shall not accept compensation for representing a client from one other than the

engaged in unauthorized practice of law by determining fee arrangements, advising clients on their legal rights, and managing virtually all aspects of their discrimination claims); *Matter of Levine*, 20 Mass. Att'y Discipline Rep. 311, 314-315 (2004) (suspended real estate attorney engaged in unauthorized practice of law by directly providing all services connected with real estate conveyances except conducting actual closings, including provision of "legal opinions and advice that ultimately allow[ed] the transaction[s] to go forward").

[36]Even when the attorney plays a dual role in representing multiple parties, such as when the attorney is paid by an insurance company to represent an insured, see *McCourt Co.* v. *FPC Props., Inc.*, 386 Mass. 145, 146 (1982) ("law firm is attorney for the insured as well as the insurer"), the lawyer owes a duty to represent fully the interests of each client, see *Palermo* v. *Fireman's Fund Ins. Co.*, 42 Mass. App. Ct. 283, 291 (1997) (insured parties are owed "full measure of the fiduciary duties of loyalty and independent judgment" as would be owed if those parties had directly retained attorney). For more on the complicated "tripartite" relationship among attorneys, insurers, and the insured, see R.L. Neumeier, Ethical Issues in Insurance Defense, Ethical Lawyering in Massachusetts, § 13.2 at 13-3—13-12 (Mass. Continuing Legal Educ. 3d ed. 2009).

client unless: [1] the client consents after consultation; [2] there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and [3] information relating to representation of a client is protected as required by [Mass. R. Prof. C. 1.6, 426 Mass. 1322 (1998)]"). The degree of interposition and the facts of each individual case play a role in determining whether an inappropriate intermediary relationship exists — that is, one in which the intermediary, because of the degree of its control over the attorney, is itself deemed to be engaged in the unauthorized practice of law. See *Joffe* v. *Wilson, supra* at 53, quoting *Matter of Maclub of Am., Inc.,* 295 Mass. at 50 (organizations making services of attorneys available to subscribers "have been held to be engaged in the 'purchase and sale of legal services' . . . and thus illegally practicing law where the control of the attorneys rested with the organizations rather than with the subscribers who were the true clients"). See also *Matter of the Shoe Mfrs. Protective Ass'n,* 295 Mass. at 372-373.

b. *Conduct of Massachusetts closing attorneys.* Question Two focuses directly on the conduct of NREIS in contracting with Massachusetts attorneys to serve as closing attorneys. We have answered it to the extent that we can on the record before us. However, we consider this question also to be concerned, albeit less directly, with the conduct of the closing attorneys. We add the following observations.

As a matter of common and long-standing practice in the Commonwealth, an attorney must be involved in the closing or settlement of real property conveyances, a fact that the parties here do not dispute.[37] Some States do not require that an attorney conduct these closings. See, e.g., Va. Code § 55-525.18(B)(1) (Supp. 2010). See also Palomar, War Between Attorneys and Lay Conveyancers — Empirical Evidence Says "Cease Fire!," 31 Conn. L. Rev. 423, 466-471 (1999). We decline here to follow their lead and overturn our established practice. See *Lowell Bar Ass'n* v. *Loeb,* 315 Mass. at 186 ("practices of the community have an important bearing on the scope of the practice of law").

The closing is where all parties in a real property conveyancing transaction come together to transfer their interests, and where

---

[37]In fact, the record indicates that NREIS retains attorneys to attend every mortgage loan closing because its lender clients insist that an attorney be present.

459 Mass. 512 (2011)                                              533

Real Estate Bar Association for Massachusetts, Inc. *v.* National Real Estate Information Services.

the legal documents prepared for the conveyance are executed, often including but not limited to the deed, the mortgage and the promissory note.[38] The closing is thus a critical step in the transfer of title and the creation of significant legal and real property rights. Because this is so, we believe that a lawyer is a necessary participant at the closing to direct the proper transfer of title and consideration and to document the transaction, thereby protecting the private legal interests at stake as well as the public interest in the continued integrity and reliability of the real property recording and registration systems.[39] See, e.g., *Selectmen of Hanson* v. *Lindsay,* 444 Mass. 502, 507 (2005); *Houghton* v. *Rizzo,* 361 Mass. 635, 643 (1972). In other words, many of the activities that necessarily are included in conducting a closing constitute the practice of law and the person performing them must be an attorney.[40] See *Matter of the Shoe Mfrs. Protective Ass'n,* 295 Mass. at 372 (establishing legal rights of others and drafting documents by which such rights are established are practice of law). See also *LAS Collection Mgt.* v. *Pagan,* 447 Mass. 847, 850 (2006) (practice of law limited to members of bar in order to

---

[38]For a list of documents that may be part of the closing package, see note 31, *supra.*

[39]In the discussion that follows, while we do not specify in each instance, we are referring to the obligations of the closing attorney for the lender-mortgagee, because of course NREIS is retaining an attorney to represent the lender, not the borrower-mortgagor. Although in some circumstances an attorney for the lender may owe a statutorily imposed duty to the borrower as well as his or her lender client (see, e.g., G. L. c. 93, § 70, discussed at note 46, *infra*; G. L. c. 183, § 63B, discussed in Part 4 [a] [iii], *supra,* and note 48, *infra*) the attorney's professional obligation in the first instance is to represent the client, not all the parties to the transaction. See *Page* v. *Frazier,* 388 Mass. 55, 60-63 (1983).

[40]Although G. L. c. 221, § 46, indicates that corporations are not prohibited from representing themselves and performing legal functions on their own behalf, this court has ruled that corporations may not operate in a pro se capacity with respect to certain activities that constitute the practice of law. See *Varney Enters., Inc.* v. *WMF, Inc.,* 402 Mass. 79, 79 (1988) ("corporation may not be represented in judicial proceedings by a corporate officer who is not an attorney licensed to practice law in the Commonwealth"). We conclude that the same rule should apply with respect to real estate closings — that is, that corporations engaged, for example, in mortgage lending activities such as NREIS's lender clients, may only be represented by a licensed attorney in connection with the closing of any mortgage loan transaction. We reach this conclusion in part because the duties and obligations of a closing attorney may extend to parties beyond the lender-client. See notes 45, 48, *infra.*

protect public welfare); *Matter of Keenan*, 314 Mass. 544, 546-547 (1943) (same).

Implicit in what we have just stated is our belief that the closing attorney must play a meaningful role in connection with the conveyancing transaction that the closing is intended to finalize. If the attorney's only function is to be present at the closing, to hand legal documents that the attorney may never have seen before to the parties for signature, and to witness the signatures, there would be little need for the attorney to be at the closing at all. See *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. at 665 n.4 ("the public interest will not be served by requiring that routine duties be performed by attorneys when laymen could adequately and more economically perform the functions"). We do not consider this to be an appropriate course to follow. Rather, precisely because important, substantive legal rights and interests are at issue in a closing, we consider a closing attorney's professional and ethical responsibilities to require actions not only at the closing but before and after it as well.

The lender's closing attorney has a responsibility to his or her client to ensure that the seller (in a purchase and sale transaction) or borrower-mortgagor (in a mortgage financing transaction) is in a position to convey "marketable title" to the real property at issue.[41] At its core, marketable title means title that is "free from encumbrances beyond reasonable doubt."[42] *Queenin* v. *Blank*, 268 Mass. 432, 436 (1929). See *Swartz* v. *Sher*, 344

---

[41]Although it is the borrower-mortgagor's responsibility to deliver clear title, in practice, lenders and their closing attorneys typically assume the responsibility for ensuring marketability of title. See Brust, Common Practices to Close the Sale, *supra* at § 8.3.4, at 8-8—8-9.

[42]There is no precise definition of marketable title in Massachusetts, and what constitutes marketable title may differ depending on the wording of documents that are relevant to the transaction, including a purchase and sale agreement when one is involved. See, e.g., *O'Meara* v. *Gleason*, 246 Mass. 136, 138 (1923) (discussing difference between "good and clear record" title and "good marketable title"). See also W.P. Graham, Title Insurance, Real Estate Title Practice in Massachusetts § 4.2(c), at 4-40—4-44 (Mass. Continuing Legal Educ. 2d ed. 2010) (examining Massachusetts case law relating to different types of marketable title promised in purchase and sale agreements).

A standard purchase and sale agreement states that the seller will deliver a deed providing "good and clear record and marketable title" to the buyer. See, e.g., 1 R.A. Dillingham, Buying and Selling a Home, Massachusetts

Mass. 636, 638 (1962); *O'Meara* v. *Gleason*, 246 Mass. 136, 138 (1923); *Jeffries* v. *Jeffries*, 117 Mass. 184, 187 (1874); *Richmond* v. *Gray*, 3 Allen 25, 26-27 (1861). Determining marketable title is a multiple step process that demands both investigation of the record at the registry of deeds and analysis of all title-related information relating to the property, with the goal of making sure that the seller — or, more at issue here, the mortgagor — actually owns the property to be mortgaged and that there are no other legal claims on the property that might otherwise frustrate or jeopardize the conveyance.

As we have previously indicated, the first step of this process, investigation of the record at the registry of deeds and preparation of a title report or abstract, generally does not constitute the practice of law,[43] and these activities are commonly performed by nonlawyers for real estate attorneys. The second step in this process — analyzing title abstracts and other records to render a legal opinion as to marketability of title — does constitute the practice of law in Massachusetts.[44] See *Matter of Chimko*, 444 Mass. at 749-750 (rendering legal advice and opinions tailored to individualized needs of clients is practice of law); *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. at 372 (same). See also *Fall River Sav. Bank* v. *Callahan*, 18 Mass. App. Ct. at 77-84 (discussing obligations of lawyer in certifying marketability of title). A determination of marketable title therefore typically must be performed by an attorney prior to the execution of the mortgage documents at the closing, and also prior to recording them.[45] We emphasize that the closing attorney possesses an ethical and professional obligation to ensure marketability of

Basic Practice Manual Exhibit 5C, at 5-23 (Mass. Continuing Legal Educ. 3d ed. 2009). "Good and clear record" title is title "free from obvious defects, and substantial doubts" in the record, and one for which the record "show[s] an indefeasible unencumbered estate." *O'Meara* v. *Gleason*, 246 Mass. at 138. Accordingly, a buyer's attorney (who stands in the same place as a lender-mortgagee's attorney in a mortgage loan transaction) owes an obligation to his or her client to determine that the seller's title meets this standard.

[43]See notes 15, 17, *supra*, and accompanying text.

[44]However, merely identifying title defects and title encumbrances, or making simple recommendations about resolving such issues, does not always constitute the practice of law. See *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. at 665.

[45]The obligation to determine marketability of title thus extends both before and after the actual closing itself up until the moment of recording the title

title regardless whether the closing attorney personally performs this analysis.[46,47]

In addition to marketability of title, a closing attorney has a duty to effectuate a valid transfer of the interests being conveyed at the closing. This includes not only the actual transfer of title on behalf of the attorney's client, but also the transfer of the consideration for the conveyance — typically mortgage loan proceeds in the case of the mortgage transactions at issue here. With respect to such loan proceeds, the duty derives in part from rules of professional conduct. See *Matter of Franchitto*, 448 Mass. 1007, 1008 (2007), citing Mass. R. Prof. C. 1.15 (a), 426 Mass. 1363 (1998), and G. L. c. 183, § 63B.[48]

---

transfer. The closing attorney, or another attorney connected with the conveyance, must therefore typically analyze marketability of title before the closing and also perform or obtain a title "rundown" immediately prior to recording the mortgage documents to ensure that no other encumbrances have been placed on the property from the time of the initial title search. See Brust, Common Practices to Close the Sale, *supra* at § 8.5.1, at 8-21. As stated in the text, if the closing attorney himself or herself does not perform these tasks, the closing attorney must ensure that they have been adequately performed.

[46]The scope of obligation for determining marketable title has been partially defined by the Legislature. The title certification statute, G. L. c. 93, § 70, requires an attorney for the lender in a purchase money first mortgage to certify that the mortgagor and mortgagee hold "good and sufficient record title" and that such certification must include a title examination dating back at least fifty years from the date of the conveyance. The purpose of G. L. c. 93, § 70, is to ensure that "the granting of a mortgage [has] vest[ed] title in the mortgagee to the land placed as security for the underlying debt." *Lyon* v. *Duffy*, 77 Mass. App. Ct. 860, 865 (2010), quoting *Maglione* v. *BancBoston Mtge. Corp.*, 29 Mass. App. Ct. at 90. The Legislature, however, did not impose the statute's certification requirements on mortgage refinancing transactions, and we do not do so today as a matter of an attorney's professional responsibility. Nevertheless, as indicated in the text, closing attorneys representing lender-mortgagees have an obligation to their clients to ensure that all mortgages properly vest title in mortgagees.

[47]Analyzing the title to determine marketability also may reveal either title defects or title encumbrances that need to be resolved before the transfer of title can be completed. Resolution of some title problems, such as those that require an appearance before a court, will likely involve the practice of law, while others, such as paying outstanding taxes, mortgages, and liens, may not. See *LAS Collection Mgt.* v. *Pagan*, 447 Mass. 847, 849-850 (2006) (preparing for and representing others in court is practice of law); *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. at 183 (representing others in court and giving legal advice are practice of law).

[48]See Part 4 (a) (iii), *supra*, where we discuss the good funds statute. The statute, among other things, stipulates that mortgage proceeds owed to a bor-

6. *Conclusion.* For the reasons stated, we answer a probable no to the first certified question, but are not able to answer the second certified question on the present record; we offer the discussion concerning the duties of a closing attorney by way of advice. The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the First Circuit, as the answers to the questions certified, and will also transmit a copy to each party.

*So ordered.*

---

rower may be disbursed to "the mortgagor, the mortgagor's attorney or the mortgagee's attorney." G. L. c. 183, § 63B. If the funds are disbursed to one of the attorneys, that attorney is obligated under the statute as well as professional conduct rules to see to it that such disbursements are properly and timely transferred to the appropriate recipient or recipients. See *Matter of Franchitto*, 448 Mass. 1007, 1008, 1010 (2007) (upholding public reprimand of attorney whose lender client fraudulently failed to fund loans it had engaged attorney to close; attorney violated both disciplinary rules and good funds statute).