### IN THE MATTER OF ANTHONY RAOUL BOTT.

Suffolk. January 4, 2012. - June 5, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Unauthorized Practice of Law. Supreme Judicial Court,* Practice of law. *Attorney at Law,* Disciplinary proceeding.

This court concluded that although, as a general proposition, a person does not engage in the practice of law when acting as a mediator [432-434], an attorney who has resigned from the practice of law while the subject of disciplinary investigation, or who has been disbarred or suspended from the practice of law, may be prohibited from serving as a mediator when to do so would be perceived by the public as an extension of the attorney's practice of law, or when the conduct of the mediation is so closely related to the practice of law as to constitute legal work [434-438].

This court remanded to the county court a petition from an attorney whose resignation had been accepted as disciplinary sanction to work, either for pay or on a voluntary basis, as a mediator, where the record did not permit a determination whether the petitioner should be permitted to serve as a mediator prior to any future reinstatement as a member of the bar of the Commonwealth. [438-439]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on March 24, 2005.

A petition, filed on September 10, 2010, was reported by *Botsford,* J.

*Judy A. Levenson* for the petitioner.

*Dorothy Anderson,* Assistant Bar Counsel.

*Alisha R. Bloom, Deirdre Heatwole, Rudolph Kass, David A. Hoffman, & Thomas R. Marton,* for Community Dispute Settlement Center, Inc., & others, amici curiae, submitted a brief.

DUFFLY, J. We address whether an attorney (petitioner) whose resignation from the practice of law was accepted as a disciplinary sanction may now work, either for pay or on a volunteer basis, as a mediator.[1] We conclude that, although mediation

___

[1]We acknowledge the amicus brief of Community Dispute Settlement Center,

does not in all circumstances constitute the practice of law, an attorney who has resigned from the practice of law while the subject of disciplinary investigation under S.J.C. Rule 4:01, § 15, as appearing in 425 Mass. 1319 (1997), or who has been disbarred or suspended from the practice of law under S.J.C. Rule 4:01, § 8, as appearing in 453 Mass. 1310 (2009), may be prohibited from serving as a mediator when to do so would be perceived by the public as an extension of the attorney's practice of law, or when the conduct of the mediation is so closely related to the practice of law as to constitute legal work within the meaning of S.J.C. Rule 4:01, § 17 (7), as amended, 453 Mass. 1307 (2009). We remand to the county court for a determination whether it is appropriate, in light of our opinion, that the petitioner engage in mediation, and, if so, to impose any conditions necessary to protect his mediation clients and to ensure the integrity of the legal profession.

*Background.* On May 24, 2005, the petitioner submitted an affidavit of resignation pursuant to S.J.C. Rule 4:01, § 15; his resignation was thereafter accepted as a disciplinary sanction. *Matter of Bott,* 21 Mass. Att'y Discipline Rep. 64 (2005).[2]

During the spring of 2009, the petitioner successfully completed a mediation training program. In September, 2010, he filed a petition for relief in the county court pursuant to G. L. c. 211, § 3, requesting permission to serve as a mediator. The single justice ordered the petitioner to submit an affidavit describing the type of mediation work he proposed to undertake

Inc.; Family Services of Central Massachusetts; MetroWest Mediation Services, Inc.; North Shore Community Mediation, Inc.; Massachusetts Office of Public Collaboration; the Mediation Group; Boston Law Collaborative, LLC; and Mediation Works Inc.

[2]The petitioner resigned from the practice of law following an investigation by the Board of Bar Overseers (board) that revealed that he had settled a personal injury claim without informing his client, understated the settlement amount, and converted a portion of the proceeds for his personal use. *Matter of Bott,* 21 Mass. Att'y Discipline Rep. 64, 64-66 (2005). He ultimately made full restitution to the client. *Id.* at 66.

The petitioner later pleaded guilty to charges of larceny and forgery. He was sentenced to a period of incarceration followed by ten years' probation, with conditions including that he refrain from legal practice in any jurisdiction during the probationary period.

and the anticipated conditions of engagement, and reserved and reported the case to the full court.[3]

*Discussion.* 1. *Practice of law.* We have said that "what constitutes the practice of law" is a subject that lies "within the exclusive power of the courts to determine." *Real Estate Bar Ass'n for Mass.* v. *National Real Estate Info. Servs.*, 459 Mass. 512, 517 (2011) (*REBA*), citing *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. 176, 180 (1943). We have noted, too, that the practice of law is not easily defined. "Whether a particular activity constitutes the practice of law 'must be decided upon its own particular facts . . . .' " *REBA*, *supra*, quoting *Matter of the Shoe Mfrs. Protective Ass'n*, 295 Mass. 369, 372 (1936).

Many activities generally associated with the practice of law "are also undertaken by persons in other professions and occupations." *REBA*, *supra* at 518. We have rejected the proposition that "whenever, for compensation, one person gives to another advice that involves some element of law, or performs for another some service that requires some knowledge of law, or drafts for another some document that has legal effect, he is practising law." *Id.*, quoting *Lowell Bar Ass'n* v. *Loeb*, *supra* at 181. "[F]or an activity to be considered the 'practice of law' such that a nonlawyer cannot perform it without committing the unauthorized practice of law, the activity itself must generally fall 'wholly within' the practice of law." *REBA*, *supra*, and cases cited.

Although mediation is not generally subject to regulation or licensure in Massachusetts, the Uniform Rules on Dispute Resolution, S.J.C. Rule 1:18, as amended, 442 Mass. 1301 (2005) (Uniform Rules), offer ethical principles and guidance for mediation practice when performed as a court-connected

---

[3]The petitioner proposes to serve "as a completely neutral mediator" in disputes involving, among other areas, "auto repair/sales, employment, domestic relations, landlord/tenant, real estate matters, contracts . . . , personal injury, and/or [insurance] benefit issues." He intends to work as "an individual mediator" and not in association with any attorney or law firm; he might work with nonattorney mediators, or as an "ombudsman" for a corporate entity. He also anticipates possibly serving as a volunteer mediator under the auspices of an organization primarily composed of nonattorney volunteers to assist claimants at no cost. He would not hold himself out as an attorney, and would make expressly clear that he does not represent any party involved in a mediation and cannot give legal advice.

dispute resolution service.[4] Rule 2 of the Uniform Rules, 427 Mass. 1303 (1998), defines "[m]ediation" as "a voluntary, confidential process in which a neutral is invited or accepted by disputing parties to assist them in identifying and discussing issues of mutual concern, exploring various solutions, and developing a settlement mutually acceptable to the disputing parties."[5] The Uniform Rules also set forth the required training, professional qualifications, and experience necessary for court-connected mediators.

Any individual who seeks to serve as a mediator in court-connected dispute resolution, including an attorney, must undertake the prescribed mediation training.[6] The rules do not provide that training in the law is a substitute for training as a mediator, nor do they suggest that a legal education enhances or contributes to skill as a mediator. Indeed, the rules proscribe the use of "[a]cademic degrees and professional licensure" as "preclusive criteria . . . in qualifying mediators." Rule (8) (b) (iii) of the

---

[4]Rule 2 of the Uniform Rules on Dispute Resolution, S.J.C. Rule 1:18, 427 Mass. 1303 (1998) (Uniform Rules), provides:

> " 'Court-connected dispute resolution services' means dispute resolution services provided as the result of a referral by a court. 'To refer' . . . means to provide a party to a case with the name of one or more dispute resolution services providers or to direct a party to a particular dispute resolution service provider."

[5]See also G. L. c. 233, § 23C, which provides for confidentiality of communications and nondisclosure of a mediator's work product, and defines a mediator as:

> "[A] person not a party to a dispute who enters into a written agreement with the parties to assist them in resolving their disputes and has completed at least thirty hours of training in mediation and who either has four years of professional experience as a mediator or is accountable to a dispute resolution organization which has been in existence for at least three years or one who has been appointed to mediate by a judicial or governmental body."

[6]"A mediator shall successfully complete a basic mediation training course of at least thirty hours and a court orientation . . . . A mediator shall also complete any additional, specialized training required by a Trial Court Department." Rule (8) (c) (i) of the Uniform Rules, 441 Mass. 1302 (2005). Limited exemptions from training are set forth in Rule (8) (k) of the Uniform Rules, 441 Mass. 1302 (2005); training as a lawyer is not among them. See *id.*

Uniform Rules, 441 Mass. 1302 (2005).[7] A mediator is not permitted to "provide legal advice, counseling, or other professional services in connection with the dispute resolution process," even if that individual is an attorney. Rule (9) (c) (iv) of the Uniform Rules, 427 Mass. 1316 (1999).

We conclude that, as a general proposition, a person does not engage in the practice of law when acting as a mediator in a manner consistent with the Uniform Rules.

2. *Legal work under S.J.C. Rule 4:01, § 17 (7).* We next consider whether mediation, when performed by an attorney who has resigned from the practice of law while the subject of disciplinary investigation, or has been disbarred or suspended from the practice of law, constitutes legal work in the context of bar discipline matters under S.J.C. Rule 4:01.

Citing S.J.C. Rule 4:01, § 17 (7), which precludes a disbarred or suspended lawyer, or one who has resigned while the subject of disciplinary investigation, from "engag[ing] in legal or paralegal work," bar counsel argues that the category of "legal . . . work" contemplated therein is broader than the practice of law and contends that, when performed by a lawyer in one of those categories, mediation may be prohibited legal work. We do not agree with bar counsel's reading of the rule and conclude that "legal . . . work" means the practice of law.

The term "legal . . . work" appears only in § 17 (7) and (8) of S.J.C. Rule 4:01. Section 17 (7) provides that, with the exception of employment as a paralegal subject to conditions and limitations set forth in S.J.C. Rule 4:01, § 18 (3), as appearing in 453 Mass. 1315 (2009):

---

[7]As noted by the amici, a 2011 survey of seventeen organizations providing mediation services in Massachusetts found that nonlawyers accounted for nearly sixty per cent of mediators. They included "social workers, psychologists, law enforcement personnel, paralegals, educators, government employees, business and organizational consultants, human resources professionals, accountants and financial planners, realtors, and civic and community leaders, among others." See Erickson, Two Alternatives to Litigation: An Introduction to Arbitration and Mediation, 60 Disp. Resol. J. 42, 48 (2005-2006) ("Mediators do not have to have a law degree or practice law [although many do]. Mediators often have degrees in construction, economics, business administration, dispute resolution, political science, labor management, psychology, communication or other subjects. Mediators are usually experts in negotiation and conflict resolution and they may have expertise in the subject matter of the dispute").

"[N]o lawyer who is disbarred or suspended, or who has resigned or been placed on disability inactive status under provisions of this rule shall engage in legal or paralegal work, and no lawyer or law firm shall knowingly employ or otherwise engage, directly or indirectly, in any capacity, a person who is suspended or disbarred by any court or has resigned due to allegations of misconduct or who has been placed on disability inactive status."

Section 17 (8) of S.J.C. Rule 4:01, as appearing in 453 Mass. 1314 (2009), provides that any such lawyer found to have engaged "in legal or unauthorized paralegal work . . . may not be reinstated until after the expiration of a specified term determined by the court."

Prior to the 2009 amendment, § 17 (7) did not include the term "legal . . . work," and § 17 (8) did not include the phrase "unauthorized paralegal work." The notice inviting comment concerning the proposed amendment to the rule stated: "The proposal amends S.J.C. Rule 4:01 § 17 (7) and (8) to provide that lawyers found to have engaged in the practice of law or unauthorized paralegal work while suspended, disbarred, or subject to a disciplinary resignation, may not be reinstated until after the expiration of a 'specified term determined by the court.' "[8]

That "legal . . . work" refers to the practice of law is apparent from other provisions in § 17, such as those describing the actions a lawyer must take following suspension, disbarment, or disciplinary resignation. Those requirements include that the lawyer notify clients "that he or she is disqualified from acting as a lawyer after the effective date thereof," S.J.C. Rule 4:01,

---

[8]The genesis of the amendments to S.J.C. Rule 4:01, including those to § 17 (7) and (8), was a request from this court that certain recommendations in the October, 2005, American Bar Association Report on the Lawyer Regulation System of Massachusetts (ABA Report) be implemented.

The ABA Report recommended that S.J.C. Rule 4:01, § 18 (3), be amended to prohibit a disbarred or suspended lawyer from working as a paralegal. The report's authors assumed that "improper 'legal work,' " as used in § 17 (8), meant "engaging in the unauthorized practice of law"; they noted that § 18 (3) "does not set forth requirements for the monitoring of . . . paralegal work to ensure that the disbarred or suspended lawyer does not engage in the unauthorized practice of law. Nor does it provide a means by which to ensure that the licensed lawyer or law firm that employs such an individual is not aiding in the unauthorized practice of law." ABA Report, Commentary to Recommendation 12.

§ 17 (1) (c), as appearing in 425 Mass. 1321 (1997), and notify all parties in pending matters that "the lawyer . . . is disqualified from acting as a lawyer," S.J.C. Rule 4:01, § 17 (1) (d), as appearing in 425 Mass. 1321 (1997). Additionally, S.J.C. Rule 4:01, § 17 (3), as appearing in 425 Mass. 1321 (1997), provides that, after entry of orders imposing disbarment or suspension or accepting resignation, "the lawyer shall not accept any new retainer or engage as lawyer for another in any new case or matter of any nature," and a copy of the order must promptly be transmitted to "each court in the Commonwealth" where the lawyer practiced. S.J.C. Rule 4:01, § 17 (4), as appearing in 425 Mass. 1321 (1997). These provisions mandate that the disciplined lawyer cease the practice of law. Section 17 (7) and (8) enforce that mandate by providing for sanctions against the disciplined lawyer for noncompliance and by prohibiting lawyers and law firms from aiding in the unauthorized practice of law by engaging the disciplined lawyer.

Bar counsel argues that bar discipline decisions have defined "legal . . . work" to include activities commonly performed by lawyers in conjunction with their practice of law, even if those activities are also performed by nonlawyers. See, e.g., *Matter of Shanahan*, 26 Mass. Att'y Discipline Rep. 582, 587 (2010) ("An activity that may not constitute practicing law when performed by another category of professional may well become the practice of law when a lawyer, disbarred or not, performs it"); *Matter of Eastwood*, 10 Mass. Att'y Discipline Rep. 70, 77 (1994) (abstracting records from registry of deeds constitutes practice of law when conducted by suspended lawyer); *Matter of Oates*, 5 Mass. Att'y Discipline Rep. 274, 278 (1986) (disbarred attorney prohibited from searching land titles because "title searching is commonly perceived by the general public to be a pursuit, if not exclusively within the realm of the legal profession, closely associated with it"). We do not agree that these decisions stand for the proposition that any activity becomes the practice of law solely because it is performed by a lawyer, but do agree that there may be circumstances where work that does not constitute the practice of law when engaged in by non-lawyers may qualify as legal work that a disbarred or suspended lawyer is precluded from performing.

In the context of bar discipline proceedings, it is relevant whether a disbarred or suspended lawyer draws on his or her legal education and experience and exercises judgment in applying legal principles to address the individual needs of clients. Thus, for example, in *Matter of Shanahan, supra* at 586, an attorney violated a judgment of disbarment by "applying his knowledge of statutory and town bylaw requirements related to permitting, conservation, property subdivision and conveyancing to address the specific needs of his various clients," and by appearing before planning and zoning boards as the clients' representative, "in connection with their legal rights and obligations concerning their property." *Id.* Cf. *REBA, supra* at 523-524 (in context of unauthorized practice of law, extent to which drafting and preparation of documents for others may constitute practice of law "depends to some degree on the type of document, whether legal rights and obligations are being established, whether the document involves providing legal advice or a legal opinion, and whether the document is tailored to address a client's individual legal needs").

These decisions have focused also on the extent to which the lawyer engaged in the same work as part of the lawyer's previous legal practice, and whether the work is customarily engaged in by lawyers. "When a discharged lawyer is engaged in the same area and type of work" as he or she was prior to being disbarred, "the issue of public perception becomes particularly problematic." *Matter of Shanahan, supra* at 587, citing *Matter of Rome*, 10 Mass. Att'y Discipline Rep. 229, 231-232 (1994). Abstracting records from the registry of deeds has been held to constitute the practice of law when conducted by a suspended lawyer whose practice was almost exclusively in real estate law. *Matter of Eastwood, supra* at 77 ("because the lawyer's misconduct occurred in real estate matters, it would be inappropriate to set forth an exception to his suspension to allow him to participate in real estate matters in a registry of deeds during the period of his suspension"). See *Matter of Oates, supra* (disbarred attorney denied leave to maintain his employment searching land titles and issuing title opinions to attorneys because, subsequent to his disbarment, § 17 [7] "in effect, eliminates his client base by prohibiting attorneys from hiring the respondent for any purpose").

We conclude that an attorney who has resigned while the subject of disciplinary investigation, or who has been disbarred or suspended from the practice of law, may be prohibited, in some circumstances, from acting as a mediator. The following considerations are relevant to determining whether mediation or other activities that do not constitute the practice of law when performed by nonlawyers may, in the context of bar discipline cases, nevertheless constitute legal work when performed by a lawyer: (1) whether the type of work is customarily performed by lawyers as part of their legal practice; (2) whether the work was performed by the lawyer prior to suspension, disbarment, or resignation for misconduct; (3) whether, following suspension, disbarment, or resignation for misconduct, the lawyer has performed or seeks leave to perform the work in the same office or community, or for other lawyers; and (4) whether the work as performed by the lawyer invokes the lawyer's professional judgment in applying legal principles to address the individual needs of clients.

3. *Application.* It may be inferred from the record that, prior to his resignation, the petitioner had not engaged in mediation, and that he does not propose to provide mediation services to attorneys with whom he previously was engaged in the practice of law or to conduct mediation in the same offices from which he previously conducted his law practice. We therefore focus our discussion on whether mediation as performed by the petitioner will invoke his professional judgment in applying legal principles to address the individual needs of mediation clients.

The record does not permit a definitive conclusion regarding the extent to which mediation is performed by lawyers in the Commonwealth. Based on a review of literature discussing lawyer mediation, and from the prevalence of rules and standards directed to the practice of mediation by lawyers, however, it appears that many lawyers do offer mediation services. As also appears from these sources, the extent to which a lawyer mediator draws on his or her legal training and experience may depend on the approach or technique employed. Thus, although court-connected mediation in the Commonwealth seems to fall within the scope of "facilitative" mediation (which does not call on

the mediator's exercise of professional judgment as a lawyer), a lawyer may also engage in "evaluative" mediation, in which a neutral evaluates the merits of the case and may offer an opinion about its worth. See generally Riskin, Understanding Mediators' Orientations, Strategies, and Techniques: A Grid for the Perplexed, 1 Harv. Negotiation L. Rev. 7, 26-34 (1996).[9]

In the context of bar discipline cases, therefore, mediation may constitute legal work such that, following disciplinary resignation, suspension, or disbarment, an individual may engage in it only in certain circumstances and under specified conditions. Although we do not preclude the possibility that the petitioner's proposed service may be appropriate, we are unable, on the record before us, to determine whether the petitioner should be permitted to serve as a mediator prior to any future reinstatement as a member of the bar of the Commonwealth.[10]

*Conclusion.* The case is remanded to the county court for the single justice to determine, on consideration of the concerns articulated in this opinion, whether and under what conditions the petitioner will be permitted to serve as a mediator.

*So ordered.*

---

[9]Stated generally, the evaluative mediator provides assessments, prediction, or direction, thereby removing some of the decision-making from the parties. The facilitative mediator's conduct is intended to allow the parties to communicate with and understand one another in order to help them make a decision. Riskin, Understanding Mediators' Orientations, Strategies, and Techniques: A Grid for the Perplexed, 1 Harv. Negotiation L. Rev. 7, 26-34 (1996).

[10]Because similar situations may arise in the future, we think it appropriate to enact a rule governing the circumstances and conditions pursuant to which suspended lawyers may, with leave from the board, be authorized to serve as mediators prior to reinstatement, and we refer the matter to the rules committee of this court.

Pending the promulgation of any new rule, an attorney who has resigned from the practice of law while the subject of disciplinary investigation under S.J.C. Rule 4:01, § 15, as appearing in 425 Mass. 1319 (1997), or who has been disbarred or suspended from the practice of law under S.J.C. Rule 4:01, § 8, as appearing in 453 Mass. 1310 (2009), or who has been placed on disability inactive status pursuant to S.J.C. Rule 4:01, § 13, as amended, 453 Mass. 1307 (2009), and who seeks to engage in employment as a mediator, may, in accordance with the time frames of such requests set forth in S.J.C. Rule 4:01, § 18 (3), as appearing in 453 Mass. 1315 (2009), seek leave from the court to engage in such employment.